THOMAS BAILEY *vs.* BENJAMIN W. BLANCHARD.

*Arbitration. Evidence—admissibility and effect of determination of one agreed upon to settle a question arising between the parties to a contract.*

A written contract between the parties relating to the subject-matters of the suit is admissible in evidence, though one of the parties contends, and offers testimony tending to prove, that it has been rescinded. It is for the jury under the instructions of the court to determine whether it has been rescinded, or is still obligatory to any extent, or has been superseded by subsequent agreements.

The scale-bill made by the person agreed upon by the parties to do the scaling under contract relating to logs or lumber, and delivered at the time of the operation to the party to be charged thereby, and made known at the time to both parties is competent evidence without producing the testimony of the scaler himself under oath.

Such scale is admissible although part of the logs were measured and reckoned up and a memorandum of them left with one of the parties on Sunday, and although the scaler ceased to scale before all the logs were hauled.

In the absence of fraud, such scale-bill is conclusive between the parties, so far as it goes.

Bailey *v.* Blanchard.

On exceptions and motion for a new trial.

Assumpsit upon an account annexed for cutting and hauling logs, the number and measurements of which were the matters in dispute ; the defendant conceding an indebtedness and offering to be defaulted for $775, and the plaintiff claiming $1,174.61. The work was commenced under a written contract, dated Nov. 23, 1870, which was offered in evidence by the defendant, objected to by the plaintiff on the ground of an alleged rescission of it, but admitted by the court. The defendant conceded that it had been changed as to price and mode of payment, but asserted that. in all other respects it continued in force, while the plaintiff said it was entirely superseded by the parol agreement between them.

The writing stipulated that the logs were "to be scaled by Joseph Treat," whose certificate of the scaling was offered by the defendant and received under objection from the plaintiff that Treat was not a certifying officer, and that the paper was not verified by his oath. Mr. Treat died before this cause was tried. He did not scale all the logs cut and hauled by Mr. Bailey for Mr. Blanchard, and the last lot he did scale was about 67,000 feet, measured upon the Lord's day, March 5, 1871, in the presence of the defendant and absence of the plaintiff. Fifty-three logs were subsequently hauled by plaintiff, which the defendant averaged according to the last scale made by Treat. The plaintiff desired to have the jury instructed, that if the last scale by Treat was made on the Lord's day, it was unlawful and void ; and that if Treat made a legal scale of only part of the logs, his scale must be entirely disregarded ; the first request the presiding justice refused to give, holding that a scaling by Treat on Sunday would not affect these parties ; as to the other, he told the jury that if Mr. Treat by mistake or otherwise, except by fraud, omitted to scale any of these logs, yet his scale so far as it went would be binding and conclusive upon the parties unless vitiated by fraud ; and that they might arrive at the quantity of feet contained in the logs not measured by Treat by reference to the scale of other persons, or as they best could from all the evidence in the case. The plaintiff claimed

that Treat measured twelve hundred feet of spruce logs and fifteen hundred feet of pine to a thousand, giving as his (Treat's) reason, that otherwise the logs would not hold out when they got down river ; and requested to have the jury instructed that the scale, if so made, was fraudulent and void ; but the judge told them that if Mr. Treat, without fraud, honestly scaled the logs according to the usage and custom of that locality at that time, such method of scaling being within the contemplation of the parties in making their contract, his scale-bill would be binding and conclusive upon the parties.

The plaintiff argued that he was entitled to be paid for the logs actually hauled by him to the designated point upon the Baskahegan stream, without reference to the number of them reaching the mills below ; which the court told the jury was true with the qualification that the quantity was to be established at the place of deposit, according to the custom or usage then prevailing there, and contemplated by the parties in their contract, as before stated.

The plaintiff having obtained a verdict for only $719.81, excepted to the foregoing instructions and refusals to instruct, and moved to set aside the verdict as against law and the weight of evidence.

*J. & G. F. Granger,* for the plaintiff.

Treat's scaling on Sunday was done by defendant's procurement, and in his presence, and is void. Long on Sales, 133-4, 145 ; *Towle v. Larrabee,* 26 Maine, 464 ; *State v. Suhur,* 33 Maine, 539 ; *Nason v. Dinsmore,* 34 Maine, 391 ; *Hilton v. Houghton,* 35 Maine, 143 ; *True v. Plumley,* 36 Maine, 466 ; *Hinckley v. Penobscot,* 42 Maine, 89 ; *Tillock v. Webb,* 56 Maine, 100 ; *Parker v. Latner,* 60 Maine, 528 ; *Fox v. Abel,* 2 Conn., 541 ; *Way v. Foster,* 1 Allen, 408 ; *Day v. McAllister,* 15 Gray, 433 ; *Story v. Eliot,* 8 Cowen, 27.

There was no evidence of usage whatever ; hence, the allusion to it in the charge is erroneous. The certificate was inadmissible because not official. It was an unsworn written statement of a fact ; only this, and nothing more. *Oakes v. Hill,* 14 Pick., 448.

In *Robinson v. Fiske*, 25 Maine, 401, the scalers were introduced as witnesses. In *Berry v. Reed*, 53 Maine, 487, it appears that the scaler was a sworn surveyor.

*E. B. Harvey and C. A. Cushman*, for the defendant.

BARROWS, J. The plaintiff's objection to the admission of the written contract between himself and the defendant for the cutting and hauling of the logs, for which he was claiming to recover on a general *indebitatus assumpsit* is untenable. The exceptions show that while he claimed it was rescinded, the defendant claimed that it was in force, except so far as it had been modified by a subsequent parol agreement, increasing the price and changing the mode of payment. Whichever party was right on the disputed point, the question was one which it became necessary for the jury to pass upon, and the contract was necessarily admissible. The whole course of proceedings between the parties, as exhibited by the evidence, shows that the defendant's position in relation to it, was the correct one. The plaintiff's counsel prudently avoids dwelling at much length on the exception. But he insists strenuously upon his objection to the admission of the scale-bill made and signed by the person agreed upon in the contract, to scale the logs—Joseph Treat, who is dead—contending that the scaler's survey and conclusions upon the matter submitted to him by the parties, can only be proved by his testimony under oath, in order that the party who deems himself aggrieved may have an opportunity of cross-examining him.

The scale made by the person agreed upon by the parties to scale the logs, in a contract for the hauling or sale of them, is binding and conclusive upon the parties in the absence of fraud. *Robinson v. Fiske*, 25 Maine, 401; *Berry v. Reed*, 53 Maine, 487. Neither party is at liberty to set aside or impeach it, except upon such evidence as would avoid the award of an arbitrator mutually chosen—evidence which will satisfy the jury that the scaler acted corruptly, or that injustice is done by reason of some bias,

prejudice, or foul practice in the procurement of it. It is easy to see that the party who seeks to sustain an award or a scale-bill might be at a disadvantage when he could not have the testimony of the arbitrator or scaler to explain any apparent discrepancies between the result reached and that indicated as correct by the testimony offered to impeach it. But if the award or the scale-bill will sustain itself against all attacks without the testimony of the maker, we do not think that he who relies upon it should be deprived of the benefit of it. If a scale-bill made and delivered to the parties at the time, as this was, can be relied on as competent evidence only so long as the scaler is living within reach of process and his testimony can be had to support it, the beneficial effect which such agreements have in preventing disputes about matters that can never be so well ascertained as by those who examine them forthwith, before any movement has taken place, or any controversy has arisen, will be greatly circumscribed. When the scaler dies, or goes away, suits similar to this would often arise. We think the scale-bill was properly received in evidence, subject to be controlled or impeached only as the award of an arbitrator mutually chosen *post litem motam*, might be.

It was competent for the plaintiff to show that a part of the logs referred to in his account were not included in the scale-bill of Treat, and he was allowed by the presiding judge to establish, if he could, the existence of such a discrepancy between the scale-bill and the actual amount of logs hauled, as would lead the jury to infer some corrupt or fraudulent practice, and he seems to have had the full benefit of his attempts in this direction, so far as the rulings and instructions of the presiding judge related thereto.

The jury were duly directed to ascertain the quantity of any logs not scaled by Treat, from the other evidence in the case ; but that Treat's scale, as far as it went, "if not tainted by fraud," was to be taken as the true scale. The plaintiff's requested instructions upon that branch of the case received only such limitations and qualifications as were necessary to relieve the court from assuming to decide those questions of fact which properly belonged to the

jury. The instructions given were in full and accurate conformity with the leading case of *Robinson v. Fiske*, above cited, where the reasons and application of the rule are thoroughly discussed.

The remark is as true and applicable in this case as in that, that "the parties in making their contract have not intimated an intention that the surveyor agreed upon, should proceed otherwise in reference to the timber, than had been customary in other cases."

It was to this general course of the business there—not to any such imaginary rule, or improved usage, as the ingenuity of counsel conjures up—that the presiding judge referred in the instruction of which the plaintiff complains, which was appended to his third and fifth requests. It is simply impossible that the jury could have been misled by such a reference to the usual course of the business. The plaintiff's counsel himself says in argument, that no such point was made by defendant's counsel; and we think it equally plain that no such applications of the reference made by the court to the customary mode of scaling, could have entered the minds of either judge or jury. The jury were directly instructed that if Treat's scale was made, giving twelve and fifteen hundred feet to a thousand, in order to make them hold out below, it would be fraudulent and void.

The plaintiff lays much stress upon the refusal of the presiding judge to rule in accordance with his first and second requests, that if the last scaling done by Treat was on the Lord's Day, it was in violation of law, and void, and that as there was no legal scale by Treat of the whole of the logs, his scale must be set aside and disregarded.

·In support of his first request he cites a familiar line of cases respecting the effect of a breach of the law for the better observance of the Lord's Day committed by parties litigant, upon their rights in controversy.

That which bears the closest analogy to the case at bar, is the case of *True v. Plumley*, 36 Maine, 466, and the conclusion there reached is not favorable to the plaintiff's view. The verdict of a jury upon a case respecting which they had consulted, agreed, and

sealed up their verdict on the Lord's Day, was held not invalidated thereby. And the cases cited with approval in the opinion of the court, hold that if it had been returned, affirmed, and recorded on that day, it would have made no difference, so long as final judgment was not then rendered.

The measuring and casting up of some of these logs by Treat, and leaving a memorandum of them at the plaintiff's camp on Sunday, cannot be held to vitiate his scale. So far as the scaling of those particular logs even was concerned, the act of the scaler was not complete until the scale-bill was delivered to the defendant, who was the party to be charged thereby, and that does not appear to have been done on Sunday.

The case falls within that line of cases in which some portion of the proceedings may have taken place on Sunday, but the transaction not being completed on that day, so as to become effective, is held not to be vitiated by the illegal, and perhaps punishable, acts of those concerned in it. See *Hilton v. Houghton*, 35 Maine, 143, where the settlement of accounts between the plaintiff and principal promissor on the note in suit was made on the Lord's Day, at the request of the plaintiff, and the note was then written and signed by the principal and his sureties, but not being delivered to the plaintiff until a secular day, was held not avoided by the illegality of the incipient acts of the parties.

The position that the acts of Treat, done under the contract, so far as they were completed, are not receivable and binding, because he ceased to scale before the hauling of the logs was entirely completed, or that his scale should be set aside upon evidence of error in his count or estimate of those which he did scale, cannot be maintained. He was the scaler agreed upon by the parties. Mere mistakes of his are not to be revised here upon the strength of testimony equally liable to mistake. So far as he went under the contract, his doings are conclusive upon the parties in the absence of fraud. There is no controversy as to the number of logs hauled after Treat stopped scaling. The plaintiff's count of them is accepted; and if, as the plaintiff's counsel supposes, the

jury averaged them by Treat's last scale, it was, doubtless, because they believed his average nearer right than the average of the plaintiff's scalers.

Upon a careful review of the whole testimony, we see no great cause to question the substantial correctness of the verdict. Juries seldom err in the direction here suggested. Their sympathies are commonly with the party who has done the work, and they rarely fail to give him the benefit of as favorable a construction of the testimony as fair dealing will permit.

*Motion and exceptions overruled.*

APPLETON, C. J., WALTON, DICKERSON and PETERS, JJ., concurred.