# CASES DETERMINED

AT THE

# January Term, 1905.

---

ENGI, Respondent, vs. HARDELL and others, Appellants.

*September 27, 1904—January 10, 1905.*

*Logs and timber: Liens: Application of payments: Non-lienable demand: Receipt in full: Release of right to lien: "Slabs."*

1. In an action to foreclose a lien on lumber it appeared, among other things, that the manufacture of the lumber on which the lien was claimed was prosecuted continuously, with slight interruptions at irregular intervals for such repairs of machinery as are usually incident to such business. *Held*, under the circumstances, that the services rendered in the repairing were a mere incident to the work of manufacturing the lumber for which the plaintiff was entitled to a lien, and protected by the statute.

2. In an action to foreclose a lien on lumber it appeared, among other things, that the amount of plaintiff's board bill, paid by his employer, should be offset against his earnings. *Held*, that it was proper to apply the amount of such board bill on that part of plaintiff's demand for which he had no lien.

3. Certain laborers, assignors of plaintiff, otherwise entitled to liens on lumber, acknowledged, by written receipts, that the payment therein recited was in full for all labor performed by them on the logs from which certain of that lumber was manufactured, but the receipts did not expressly show that the laborers agreed to release their claims for a lien upon the lumber manufactured during the period of their service. *Held*, that the trial court did not err in holding that the amounts covered by such receipts were received for services, and that they were no release of the laborers' right to a lien on the lumber.

4. Under secs. 3329–3342b, Stats. 1898, giving a lien on logs, timber, etc., "slabs" are not included in the material designated as "lumber and timber," and therefore not subject to a lien.

APPEAL from a judgment of the circuit court for Oneida county: W. C. SILVERTHORN, Circuit Judge. *Affirmed in part; reversed in part.*

This is an action to recover the amount due for services rendered by the plaintiff and his assignors for the defendants E. W. Burr, Theodore Kloss, and Fred Kloss, who were doing business as the Pelican Manufacturing Company in sawing and manufacturing lumber out of logs at the town of Pelican, Oneida county. It appears that the Pelican Manufacturing Company received logs from the defendants *W. C. Hardell, Henry Heyn, Seth Kimball, John Lyons, Frank Koch, Moses Reno,* and *C. Conro & Co.,* and that these logs were sawed and manufactured into lumber between the 7th day of May, 1903, and the 19th day of June, 1903, within which period all of the services were performed for which recovery is sought, except the services in preparing and repairing the mill, which covered several days prior to May 7th. It is admitted that two of the employees—Fred Hack and Earl Lago—who kept the mill boarding house, were to board the mill employees at the rate of $3.50 per week; the Pelican Manufacturing Company to furnish the boarding house, wood and water. It was arranged that the company was to retain sufficient money out of each employee's earnings to pay Hack and Lago the amount of their board bill. The court found that at the commencement of this action there was due plaintiff for his personal services from the Pelican Manufacturing Company the sum of $11.46, and that there was due on claims for services rendered to the company before June 19, 1900, which claims the plaintiff acquired by purchase and assignment of claims for liens before this action was commenced, the following amounts: Richard Lundberg, $5.47; Robert Winquist, $34.57; Henry Winquist, $20.11; Peter Koestler, $9.57; George Koestler, $10.42; Gust. Serquist, $72.90; James Fricart, $5; Frank Meyer, $26.21; Fred Hack, $56; Earl Lago, $50.87. Each of the

employees duly filed claims for liens on or before the 8th of July, 1903, on the lumber sawed and manufactured for the defendants, as above stated, excepting James Fricart, Fred Hack, and Richard Lundberg, whose claims were assigned to plaintiff, and were included in his claim for a lien. On May 1st the Pelican Manufacturing Company had made a chattel mortgage of their sawmill property to the *Rhinelander Iron Company* and the Lewis Hardware Company. It is without dispute that B. R. Lewis acted as the trustee for the Pelican Manufacturing Company, the Lewis Hardware Company, the *Rhinelander Iron Company*, and one Emmerling, a former owner, whose interest the Pelican Manufacturing Company had purchased under an arrangement between it and these parties. He was to receive the money due the company for sawing and manufacturing lumber, and disburse it for them. He received money so due, and paid a portion of the amounts due the laborers for services rendered in manufacturing the lumber for defendants. All sums so received were applied in payment of services, except $9.40, which was paid out by him as expense of the trusteeship. He received nothing of the amounts due the Pelican Manufacturing Company for sawing and manufacturing the lumber of some of the defendants. *C. Conro & Co.* paid the amount of its sawing and manufacturing bill directly to the laborers on time checks issued to them by the Pelican Manufacturing Company for work performed at the mill. When payment was made of these time checks by *C. Conro & Co.,* the claimants signed an indorsement to the effect that the amount paid was received of *C. Conro & Co.* in full of all labor performed on logs marked "Conro." The evidence of the laborers is that they did not understand that they were receiving payment in full for all services, nor was it understood or intended to release any claim for a lien on the material so manufactured; that they could not read the indorsements; and that they were told that it was a receipt for the amount paid them for their services.

The court found that the total amount due for services to plaintiff and his assignors was the sum of $302.76, and that $284.26 of this amount was for services rendered by the claimants in the manufacture of the lumber described in the complaint, and awarded judgment against the members of the Pelican Manufacturing Company for the whole amount due, and for a laborers' lien for $284.26 on the lumber described in the complaint. This is an appeal from that part of the judgment awarding a lien for the amount of $284.26, with interest and costs, upon the lumber described in the complaint and owned by the defendants.

For the appellants there was a brief by *John Barnes, S. S. Miller,* and *A. W. Shelton,* and oral argument by *Mr. Barnes* and *Mr. Shelton.*

For the respondent there was a brief by *Van Hecke & Smart,* and oral argument by *John Van Hecke.*

The following opinion was filed October 18, 1904:

SIEBECKER, J. It is claimed that the circuit court erred in finding that there is due plaintiff the sum of $11.46 for his services rendered in manufacturing lumber for defendants at the sawmill of the Pelican Manufacturing Company. This is maintained upon the ground that the laborers were paid in full for services after May 15th, and that the services prior to this date were mainly devoted to the repair of the mill property preparatory to manufacturing the lumber. An examination of the evidence discloses, however, that the manufacturing of the lumber began on the 7th of May, and was prosecuted continuously to June 19, 1903, with slight interruptions at irregular intervals for such repairs of machinery as are usually incident to such a business. Under the circumstances the services rendered in repairing the mill are a mere incident to the work of manufacturing the lumber, for which a lien is given, and are protected under the liberal interpretation of the statute. *Carpenter v. McCord L. Co.* 107 Wis. 611, 83 N. W. 764.

Under the evidence no more than two days' services, which were rendered prior to the period for which he had a lien on the lumber manufactured for defendants, could have been included in this finding. If this amount ($3.50) is deducted from the sum found due, it would still leave a balance due him under his claim for a lien. But this deduction should not be made, because he was entitled to have this item for service applied in part payment of his board bill due the Pelican Manufacturing Company, as employers, which was to be offset against his earnings. Plaintiff does not controvert defendants' claim that the amount due for boarding the men was to be deducted from their earnings. Under such circumstances the court properly applied whatever amounts were due them for which the laborers had no lien in payment of their board bills.

It is further contended that neither plaintiff nor those who assigned their own claims to him had any lien on the lumber manufactured for the defendants *C. Conro & Co., Heyn,* and *Hardell* for the reason that the amounts due the Pelican Manufacturing Company for manufacturing this lumber had been paid by the defendants and received by the laborers for work done on this lumber. It appears that the laborers were paid these sums as claimed, and they acknowledged, by written receipts, that such payment was in full for all labor performed by them on the logs of each of these defendants, respectively, or in full payment for labor on lumber and lath at the mill. Such receipts constitute evidence of payment in full by defendants, respectively, of the amount due the laborers for manufacturing these logs into lumber, and that they received it for services rendered on the material of these defendants; but the receipts do not expressly show that the laborers receiving this money agreed to release their claims for a lien upon the lumber manufactured during the period of their service. Applying this conclusion to the facts and circumstances of the case, we cannot say that the trial court erred in holding that the amounts covered by the receipts were re-

ceived for services, and that they were no release of the laborers' right to a lien on the lumber. *Seeger v. Manitowoc S. B. Works,* 120 Wis. 11, 97 N. W. 485. The findings of the trial court of the amounts due on the claims of the laborers, that they were assigned to plaintiff as alleged by him, and that liens were properly filed within the period required by the statute, prior to the commencement of this action, are all supported by the record and the evidence.

The defendant *Rhinelander Iron Company* purchased "slabs" of the milling company, which were the product of the logs manufactured into lumber at the mill. The trial court held that this product of the logs is lienable under the laborer's lien statute. In support of this finding we are cited to cases which hold that the term "lumber," as used in the statute, includes "shingles" and "lath." That these products of the logs are treated as lumber in commerce and trade is a matter of common knowledge, but this does not seem to be the fact with respect to "slabs." Nothing in the case tends to show that they are used or treated as the other products manufactured out of logs, nor are they commonly treated or classed as "lumber or timber." We are led to the conclusion that "slabs" are not included in the material designated as "lumber and timber," and therefore not subject to a lien for services under the statute.

*By the Court.*—That part of the judgment which awards a lien on the "slabs" owned by the *Rhinelander Iron Company* is reversed; in all other respects the judgment is affirmed. The defendant *Rhinelander Iron Company* is not to be liable for nor to recover costs upon this appeal, but plaintiff is to recover his proper costs against the other defendants.

A motion for a rehearing was denied January 10, 1905.