## CONNECTICUT VALLEY LUMBER CO. v. STONE.

(Circuit Court of Appeals, Second Circuit. March 10, 1914.)

No. 215.

1. LOGS AND LOGGING (§ 10*)—"SCALER."

The term "scaler," as used in the contract for certain logging operations, means an expert employed to determine the number of board feet and the percentage of unsound timber in logs.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 19–28; Dec. Dig. § 10.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. Logs and Logging (§ 10*)—Contract—Decision of Scaler.

Where a log scaler is agreed on by the parties to a logging contract, his report is binding on both, though there is no stipulation to that effect in the contract, unless it is set aside for fraud or obvious mathematical errors.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 19–28; Dec. Dig. § 10.*]

3. Logs and Logging (§ 10*)—Contract—Measurement of Logs—Report of Scaler.

Where a logging contract provided that the timber was to be scaled sound by a specified rule, the scaler furnished and paid by defendant and boarded by plaintiff, it would be construed to mean that any scaler furnished and paid by defendant and boarded by plaintiff was a scaler mutually agreed on, whose reports would be conclusive against both parties, unless shown to be fraudulent 'or to contain obvious mathematical errors.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 19–28; Dec. Dig. § 10.*]

In Error to the District Court of the United States for the District of Vermont.

Action by Eugene Stone against the Connecticut Valley Lumber Company. Judgment for plaintiff; and defendant brings error. Reversed.

Drew, Shurteff, Morris & Oakes, of Lancaster, N. H., and Dunnett & Leslie, of St. Johnsbury, Vt., for plaintiff in error.

Elisha May and Harland B. Howe, both of St. Johnsbury, Vt., for defendant in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. Stone, the plaintiff below, entered into a contract to cut, haul and deliver on the bank of the Connecticut river at the rate of 2,000,000 board feet per year all the soft wood in a specified territory estimated to contain from 6,000,000 to 8,000,000 feet. The material provisions of the contract are:

"The timber is to be delivered at the rate of 2 million board feet per year and to continue at this rate until the land is all cut over.

"Scale.—The timber is to be scaled sound by the Maine or Holland rule, the scaler furnished and paid by the company and boarded by Stone. And Stone agrees to board such agents for the company as it is necessary to send over the works to attend to its proper cutting.

"The Connecticut Valley Lumber Company agrees to pay Eugene Stone six dollars and fifty cents ($6.50) for each and every thousand feet of logs properly cut, hauled, landed and scaled under the terms of this contract in payments as follows:

$3.00 per M on logs yarded  
2.00 "  " when landed  
1.00 "  " on May 1st  
.50 when the job is completed.

"Fifty cents per thousand is to be reserved until $2,000 is withheld, and this account is to be held by the company until the job is completed and the territory cleaned according to the provisions of this contract.

"Payments to be by check or draft monthly. Stone to be paid on or before the 15th of every month for work done the previous month with reservations stated above. Interest to be charged Stone at 6 per cent., on drafts maturing before May 1st, and interest to be credited to him on drafts maturing later

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

than May 1st, from May 1st to date of maturity. Final settlement to be made May 1st, at end of each logging season.

"Stone agrees to mark and stamp the logs with the company's regular mark and to land them in such manner that they may be properly scaled."

The timber as it was cut was yarded; that is, stored in places in the woods. The defendant sent a scaler there, who remained until November 10th. After that there was no scaling as called for by the contract, the plaintiff being paid monthly by the defendant for logs yarded apparently on estimates. He did employ a scaler himself, who never reported to the defendant. As he took no exception to the amounts paid on the logs yarded, it is to be presumed that both parties agreed to a modification of the contract as to the scaling in the woods, making conclusive the scaling at the river bank.

At the end of the season, and after he had been paid in accordance with the scaler's weekly reports made to him and to the defendant, the plaintiff claimed that he had cut, hauled and delivered about 350,000 more feet than the scaler reported. Payment of this alleged shortage being refused, he declined to go on with the contract, and brought this suit to recover $6.50 per thousand for the alleged shortage; so much of the expense as he incurred in building roads in the territory to be cut as is properly apportionable to the uncompleted term of the contract and the 50 cents per thousand feet which the company retained on the amount it admitted he had delivered. No claim of bad faith was made against the company defendant, but only against the scaler at the river bank.

[1, 2] A scaler is an expert person employed to determine the number of board feet and the percentage of unsound timber in logs. Scaling is essential to fix the rights of the parties in a contract like this and it is a continuous operation. The situation is not like those building contracts which provide that the owner's engineer or architect shall decide any disputes which may arise and shall determine when the work is completed. When the scaler is agreed upon by the parties, his report is binding upon both although there is no stipulation to that effect in the contract and it can be set aside only for fraud or obvious mathematical errors. Robinson v. Fiske, 25 Me. 401; Bailey v. Blanchard, 62 Me. 168; M. D. & I. Co. v. Allen Co., 102 Me. 257, 66 Atl. 537; Manufacturers' Bank v. Hollingsworth, 106 Me. 326, 76 Atl. 880.

[3] Although the scaler was not named in this contract, we think that under its provisions any scaler furnished and paid by the defendant and boarded by the plaintiff is to be regarded as a scaler mutually agreed upon. In accordance with this view the trial judge charged the jury that the scaler was the agent of both parties and his reports binding on the plaintiff, unless shown to have been dishonest. The only evidence to impeach the reports was that of the scaler employed by the plaintiff, who measured the logs in the woods and made 1,823 pieces and 373,310 board feet more than the scaler appointed under the contract made of the logs delivered at the river bank; the plaintiff's testimony that in one week he counted 72 logs more than the scaler allowed; finally, the testimony of several of the teamsters that logs discharged at the river bank sometimes rolled over. This discrepancy in fig-

ures is no evidence of dishonesty, and if logs rolled over at the river bank it would be the plaintiff's fault because he undertook to "land them in such manner that they may be properly scaled." However, there was no evidence to show how many rolled over, or that they were not scaled. We think the court erred in not directing a verdict for the defendant as requested.

Judgment reversed.