WILLIAM HANSCOM et al.

*vs.*

NORTH ANSON MANUFACTURING COMPANY.

Franklin.    Opinion April 9, 1921.

*A scale of logs by a surveyor agreed upon by the parties in absence of fraud or mathe-matical mistake is binding on the parties. A scaler may employ relatives of the owners. as sub-scalers provided he exercises his honest judgment in selecting them, but he can not employ the owners themselves as sub-scalers unless he afterwards personally verifies their work or so carefully supervises it that he could vouch for its correctness.*

Action of assumpsit to recover for the sale and delivery of logs at specified prices. The logs were cut partly by the plaintiff and partly by other parties. There was no controversy over the terms of the contract, the prices, nor the selection of the agreed scaler. The only contention was the quantity of logs for which the defendant was legally bound to pay. The plaintiff having obtained a verdict, upon defendant's motion to set aside the same as against the evidence, it is

*Held:*

1. It is a well settled and familiar rule of law that when the parties have agreed upon a surveyor to scale logs they are bound by his scale in the absence of fraud or mathematical mistake.

2. There was no claim here of mathematical error on the part of the agreed scaler, so that the issue is narrowed to one of actual or constructive fraud, and on this issue the burden was on the defendant.

3. The employment by the scaler of relatives of the owners as sub-scalers in certain instances did not of itself constitute fraud. The situation might be such that he would deem this to be the practical and proper. thing to do, realizing the smallness of their cut and knowing the men, their capacity and integrity. The vital question is whether he exercised his honest judgment in selecting them. If so, there was no fraud on his part, actual or constructive. This was left as a question of fact to the jury, and they, after seeing and hearing both the scaler, Mr. Lockyear, and the sub-scalers themselves, decided in his favor. A careful study of all the evidence, which is very voluminous, fails to convince the court that their conclusion was manifestly wrong.

4.   But the scaler had no authority, either express or implied, to employ the owners themselves as sub-scalers unless he afterward personally verified their work or so carefully supervised it that he could vouch for its correctness.   He could not simply accept their scale as the basis of his own and without verification make his scale of these logs conclusive upon the parties. The question of the actual quantity of logs so scaled was therefore left for the jury to determine.   The presiding Justice so instructed them and they sustained the plaintiff's claim.   We do not think their conclusion was manifestly wrong.

5.   The defendant further contends that in the use of the so-called Holland Rule by which the logs were scaled, Mr. Lockyear and his helpers employed a wrong method, by including the bark in the diameter, while the true method should be the measurement inside the bark, and that this made a difference of fifteen per cent.   Which was or is the correct method was a disputed question of fact.   The general manager of the defendant testified that when he made this contract he knew it was the general custom to scale outside the bark, and the price was made accordingly.   Under these circumstances the defendant cannot with reason complain if the scaler did what it assumed he would do.

6.   Another claim set up by the defendant was that a large number of small logs which should have been scaled as pulp logs and put in at the pulp price of $20 per thousand were scaled as saw logs and put in at the saw log price of $25 per thousand.   This however simply attacks the judgment of the agreed scaler and is not open to the defendant unless his scale is deprived of its binding force.

7.   The defendant has not sustained in the judgment of the jury the burden of overthrowing the woods scale either in whole or in part, and therefore it is unnecessary to consider the force of the rescale at Fairfield, its merits or its demerits.   The parties sold and bought, and the price was fixed, according to the Lockyear woods scale and not according to a rescale in the water at Fairfield where the defendant's mill was located, nor a mill scale after the lumber was sawn.   The woods scale was unsuccessfully attacked at the trial and we are unable to discover from the evidence any substantial justification for holding that the action of the jury was manifestly wrong and that their verdict should be overturned.

On motion to set aside the verdict by defendant.   This is an action of assumpsit to recover for logs sold and delivered at a specified price. The only question was the quantity of logs for which the defendant was legally bound to pay.   The defendant questioned the correctness of the scale of the surveyor who was agreed upon by the parties. The jury rendered a verdict for plaintiff for $39,996.55, and defendant filed a motion to set aside the verdict.   Motion overruled.

The case is fully stated in the opinion.

*McGillicuddy & Morey*, for plaintiff.

*A. K. Butler, and W. R. Pattangall*, for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, MORRILL, WILSON, JJ.

CORNISH, C. J. On defendant's general motion for new trial. The controversy arises over an oral contract made between the parties in the Summer or Fall of 1918 for the sale and delivery of logs, within the limits of the Dead River Log Driving Company, in the Spring of 1919, at specified prices. There is no dispute as to the terms of the contract. The general manager of the defendant corporation who was a witness for the plaintiff, testified that he bought from the plaintiffs whatever logs they could procure during the logging season of 1918-1919, including what they might themselves cut and what they might procure from others; that the agreed price was $25 per thousand sound scale for spruce and pine; $20 per thousand for fir; $14 per thousand for cedar; and $20 per thousand for small fir and spruce, that is pulp stock; that they agreed upon one William Lockyear as a scaler, the scaling to be done by him or under his supervision and that his scale should be final and binding upon both parties.

It was also agreed that the defendant should pay the plaintiffs a commission of one dollar per thousand on all logs bought from other parties.

With all this the plaintiffs agree. So that at the trial there was no controversy over the terms of the contract, the prices, nor the selection of the agreed scaler. The only issue finally was the quantity of logs for which under the well settled rules of law the defendant was bound to pay.

The plaintiffs' claim was for 5,173,562 feet, amounting to $120,332.90, on which credits of $78,653.29 were finally agreed upon, leaving a claimed balance of $41,679.61. The jury returned a verdict in favor of the plaintiffs for $39,996.55, the presiding Justice having directed them to disallow a claim of $1,750.82 under an alleged supplemental contract concerning the Savage logs so-called. It is this verdict which the defendant seeks to set aside on the usual ground that it is against the evidence.

We must begin the consideration of this case with the rule firmly established in this State that when the parties have agreed upon a surveyor to scale logs, in the absence of fraud or mathematical mistake they are bound by his scale. This rule grew up out of the very nature of the logging contract and the peculiar conditions under which the work must be carried on, all of which are lucidly discussed by Chief Justice Whitman in the early case of *Robinson* v. *Fiske,* 25 Maine, 401. To the strictness of this principle that the agreed scaler is like an arbitrator and his scale bill is conclusive and cannot be impeached except for fraud or mathematical error, the court has closely adhered. *Berry* v. *Reed,* 53 Maine, 487; *Bailey* v. *Blanchard,* 62 Maine, 168; *Ames* v. *Vose,* 71 Maine, 17; *Nadeau* v. *Pingree,* 92 Maine, 196; *Burton* v. *Mayo,* 106 Maine, 195.

In this case therefore the Lockyear scale must stand unless it is successfully assaulted on one or both of the excepted grounds. There is no claim here of mathematical error, so that the issue is narrowed down simply to fraud, and on this issue the burden is on the defendant. *Atwood* v. *Manufacturing Co.,* 103 Maine, 394.

It is admitted that the scale of all these logs was not made by Mr. Lockyear personally. That would have been physically impossible in an operation of that size which covered a territory extending twenty-five miles along the waters of the Dead River and involved twenty-two or twenty-three different camps. Nor did the parties contemplate that he should scale the logs personally. The work was to be done as usual in our Maine woods in like conditions, under his general supervision and inspection. The parties so testify. It was understood that he must employ others to do the actual work, log by log, and in making his selection of those men he was of course bound to exercise his honest judgment. Here the defendant makes its first attack. It says that about a million feet of these logs were actually scaled by near relatives of the operators, and about a half million feet by the owners themselves; that therefore the entire Lockyear scale loses its binding and conclusive force and should be compared with and has no more weight than the re-scale made by the defendant at Fairfield which gave a total of 3,301,846 feet, a difference of 1,871,716 feet.

This point was raised at the trial as is shown by the charge which is a part of the record, as various exceptions were taken by the defendant although not pressed.

As to the employment by Lockyear of relatives of the owners, as sub-scalers in certain instances, we cannot hold that this of itself constitutes fraud. The situation might be such that he would deem this to be the practical and proper thing to do, realizing the smallness of their cut and knowing the men, their capacity and integrity. The vital question is whether he exercised his honest judgment in selecting them. If so, there was no fraud on his part, actual or constructive. This was left as a question of fact to the jury, and they, after seeing and hearing both Mr. Lockyear and the sub-scalers themselves, decided in his favor. A careful study of all the evidence, which is very voluminous, fails to convince the court that their conclusion was manifestly wrong.

As to the employment by Lockyear of the owners themselves as sub-scalers, as he did in several cases, a different rule applies. He had no authority, either express or implied, to do that unless he thereafter personally verified the work or so carefully supervised it that he could vouch for it as for his own. He could not simply accept their scale as the basis of his own and without verification make his own scale of these logs conclusive upon the parties. This aggregate therefore of about a half million feet was stripped of the badge of conclusiveness, and the question of the actual quantity was left for the jury to determine. They could hear all the testimony of the scalers who actually did the work and give to it such weight as it deserved considering they were interested parties, and they could also hear the testimony of the defendant on the re-scale which it claimed showed a large shortage. The presiding Justice so charged the jury. Again they sustained the plaintiffs claim, and again the court is unable to find their conclusion manifestly wrong.

The defendant further contends that in the use of the so-called Holland Rule with which the logs were scaled, Mr. Lockyear and his helpers employed a wrong method, by including the bark in the diameter, while the true method should be the measurement inside the bark, and that this made a difference of fifteen per cent.

Which was or is the correct method was a disputed question of fact. Mr. Forrest H. Colby, the Land agent and a man of large experience, testified that the bark should be excluded, while Mr. Lockyear, also a man of many years experience, testified that the bark should be included. He said that under a straight and sound survey it was customary to exclude the bark, but under a sound survey it should be

included, and others claimed that with the old-fashioned circular saws so much of the log was wasted in sawing that the bark was excluded, while with the modern band saws there is little wastage and the bark should be included. Some of the sub-scalers on this operation testified that they included and others that they excluded the bark. No fixed custom was proved. It was for the jury to decide which was the proper method, if there is a proper method recognized among lumbermen.

Moreover, Mr. Hume, the general manager of the defendant, testified that when he made this contract he knew it was the general custom to scale outside the bark and the price was made accordingly. Under these circumstances the defendant cannot with reason complain, if the scaler did what it assumed he would do.

Another claim set up by the defendant was that a large number of small logs which should have been scaled as pulp logs and put in at the pulp price of $20 per thousand were scaled as saw logs and put in at the saw log price of $25 per thousand. This, however, simply attacks the judgment of the agreed scaler and is not open to the defendant unless his scale is deprived of its binding force.

The result is that the defendant has not sustained in the judgment of the jury the burden of overthrowing the Lockyear scale either in whole or in part, and therefore it is unnecessary to consider the force of the re-scale at Fairfield, its merits or its demerits. The parties sold and bought, and the price was fixed, according to the Lockyear woods scale and not according to a re-scale in the water at Fairfield where the defendant's mill was located, nor a mill scale after the lumber was sawn. That woods scale was unsuccessfully attacked at the trial and we are unable to discover from the evidence any substantial justification for holding that the action of the jury was manifestly wrong and that their verdict should be overturned. The entry will be,

*Motion overruled.*