GADELL v. MICHIGAN IRON, LAND & LUMBER CO.

1. LOGS AND LOGGING—SCALE MADE BY AGREED SCALER CONCLUSIVE.
    A scale of logs made by an agreed scaler is conclusive between the contracting parties, in the absence of fraud or mistake.

2. SAME—SCALING LOGS DEFINED.
    Scaling consists of a measurement of each log for the data to determine its contents, and examination of defects and irregularities for which the scaler makes deductions as in his judgment are necessary to arrive at a safe approximation of the merchantable lumber it will produce.

3. SAME—"GROSS MISTAKE" IN SCALING LOGS DEFINED.
    By "gross mistake" in scaling logs is meant a mistake

which is clearly shown to have left out some of the logs, or increased the scale by a mistake in the tally or in the addition of the amounts on the tally-sheets, or something of that kind, and not an honest error of judgment in the scaler.

4. SAME—EVIDENCE—WITNESSES—COMPETENCY OF WITNESS.

In an action for a balance claimed to be due for logs shipped to defendant and rejected by it as culls, although sawed into lumber with the others, plaintiff, who had dealt in sawlogs for over 20 years, had estimated and inspected many million feet, and had worked for others as a scaler, was competent to express the opinion that of 2,112 logs shipped by him to defendant, when they arrived at destination 294 had not become worthless culls, and that it was a gross mistake for defendant's inspector to so find.

5. SAME—ACCEPTANCE OF CHECK NOT CONCLUSIVE THAT PAYEE CONSENTED TO REJECTION OF LOGS.

Receipt of scale sheet of logs by plaintiff from defendant showing logs scaled by it and those culled, and retaining of checks sent from time to time in payment therefor, *held*, not an acceptance of what plaintiff claimed was a mistaken rejection of unscaled logs which defendant kept possession of and sawed up, even if it be conceded to amount to an acceptance of the scale of the logs which were accepted and scaled.

6. SAME—EVIDENCE—QUESTION FOR JURY.

Where defendant kept no description of the logs it claimed were culls, and which were run through its mill with the other logs and their identity thus destroyed, the question as to whether they were worthless, or whether they should have been paid for by defendant, *held*, under conflicting testimony, a question for the jury, under proper instructions.

Error to Baraga; Stone (John G.), J.   Submitted October 3, 1923.   (Docket No. 17.)   Decided April 10, 1924.

Assumpsit by August Gadell against the Michigan Iron, Land & Lumber Company for goods sold and de-

livered. Judgment for plaintiff. Defendant brings error. Affirmed.

*Raymond Turner* and *Hubert A. Brennan,* for appellant.

*Joseph J. O'Connor,* for appellee.

STEERE, J. In the summer of 1921 defendant's agent was looking up logs for its sawmill at Iron Mountain and negotiated with plaintiff for a quantity of logs estimated at about 150,000 feet which the latter had piled on skidways at a spur on the Chicago, Milwaukee & St. Paul Railway line, near Sidnaw in Baraga county. After they had gone over the rollways a written agreement followed, dated July 29, 1921, by the terms of which defendant purchased the logs f. o. b. cars at the mill in Iron Mountain, to be shipped as it ordered. So far as material here, the agreed price was $18 per thousand for maple, and $24 per thousand for birch, basswood and elm logs:

"All logs to be live, sound, merchantable timber at least ten inches in diameter at the small end, reasonably straight and smooth to meet approval of buyer's inspector both as to kind and quality. No logs cut prior to September 1, 1920, will be accepted by the buyer.

"The seller is to make shipment of said logs as ordered to do so by the buyer.

"All timber is to be scaled merchantable according to Scribner rule at buyer's mill and by the buyer."

During September and October of that year plaintiff shipped to defendant pursuant to his contract 2,112 logs, 294 of which were rejected by defendant's inspector and not scaled; 1,818 were scaled and paid for at the agreed price. Plaintiff's claim is that all the logs he shipped were good, sound logs of the kind, size and quality required by the contract. Defendant's contention is that the logs not scaled or paid for were

worthless and rejected because either under size, crooked, sap-rotted, dozy or otherwise defective and totally worthless.   It appears undisputed the rejected unscaled logs were not sorted out and set apart from those accepted and paid for, but when unloaded from the cars all were piled together and ultimately put through the mill and sawed, the reason given by defendant for that course being that, though worthless as merchantable logs, it was more economical to run them through the mill and saw them than to sort out and set them aside.   Defendant's superintendent testified:

"We had no separate skidway in the yard for culls. When the logs were being unloaded either on the rollway or at the vat or pond, they were all rolled into together; there was the good and the bad together. They were not separated. * * * We sawed every log that came into our yard, practically.   There was nothing else to do with them.   We had to get them out of the way."

Plaintiff brought this action to recover the value of the unscaled logs, declaring on the common counts in assumpsit with a bill of particulars served upon defendant stating his claim as follows:

"7,105 ft. of Birch Saw Logs @ $24.00 per M..$170.52
"14,210 ft. of Maple Saw Logs @ $18.00 per M.. 255.78
"Demurrage on car No. 47933, shipped
   October 10, 1921, inspected and accepted
   October 13, 1921........................ 15.00

"Total .............................$441.30."

Defendant pleaded the general issue with notice of the contract, upon which it relied, and of offset, stating so far as material, as follows:

"That plaintiff consigned to the defendant a large number of small, unmerchantable, unsound and cull logs contrary to the terms of said written contract thereby causing the defendant in the unloading, decking, scaling and handling of said logs to expend a large

sum of money, to wit: One hundred thirty-six and 50/100 dollars, which amount of money the defendant will show," etc.

On the trial plaintiff's testimony was directed to showing thaɪ 294 logs were of like kind and value as the 1,818 scaled and paid for by defendant; a gross mistake was made in rejecting them as of no value; they would scale approximately 21,305 feet board measure and were worth $399.42. Defendant's testimony was to the effect that the rejected logs were worthless, that it cost to unload, deck and scale logs about $2.75 per thousand, and it was obliged to incur the expense for which offset was claimed in getting them out of the way. The case was tried by jury resulting in a verdict and judgment in plaintiff's favor for $199.71. The assignments of error urged and argued for defendant are refusal of the court to direct a verdict in its favor and admission of the following testimony by plaintiff against objection.

"Q. Can you state the average number of logs per thousand of those logs that you shipped to the defendant?

"A. Thirteen or fourteen logs to the thousand.

"Q. Of maple?

"A. All logs.

"Q. All of them?

"A. Yes.  *  *  *

"Q. Did I understand you to say Mr. Gadell, that you gave an opinion that the grade of logs which you shipped to the defendant would average thirteen or fourteen in number to the thousand?

"A. Yes, sir.

"Q. Mr. Gadell, you have testified as to your experience as an inspector. You testified that you were familiar with all of the logs shipped by you to the defendant. That all of the logs so shipped were live, sound, merchantable timber of ten inches and over at the small end. What would your opinion be of an inspector who would cull those logs that were shipped.

"The Court: You mean as to his competency?

"*Mr. O'Connor:* As to his competency.

"*A.* He isn't competent.

"*Q.* State whether or not in your opinion he made a gross mistake.

"*A.* Yes, sir, he made a gross mistake."

Only "a general objection to all this line of testimony" was offered, upon which, in the absence of a specific reason, it is urged error could not be predicated.   But a previous motion to strike out, and objection directed against any testimony of plaintiff tending to impeach defendant's scale of the logs, because the contract controlled, was argued before the court in the absence of the jury.   What went before favors the claim that this general objection was but a renewal of that proposition and the reasons for it were fairly understood by court and counsel.   That plaintiff was qualified to give opinion testimony on competent data relative to inspecting and scaling logs was fairly shown.   He testified that he had dealt in sawlogs for over 20 years, had estimated and inspected many million feet, and had worked for others as a scaler.   It is further urged that in any event he was incompetent to testify to a gross mistake of defendant's scaler because he admittedly was not at the mill where the logs were scaled, and did not see or know what kind of logs were rejected.   That a scale of logs made by an agreed scaler is conclusive between the contracting parties in the absence of fraud or mistake is conceded.   It is said scaling consists of a measurement of each log for the data to determine its contents, and examination of defects and irregularities for which the scaler makes such deductions as in his judgment are necessary to arrive at a safe approximation of the merchantable lumber it will produce.   In *Ortman* v. *Green*, 26 Mich. 209, where a scale of logs by an agreed scaler was involved, this court said:

"It does not seem to be supposed that there was any intentional fraud or misconduct in any one. But there was evidence, which the plaintiff in error had a right to argue tended to prove either incompetency or mistake—or if he chose so to urge, fraud—in the scaler. He was not allowed to rely on it, except to show fraud. And this, we think, was error."

In *Malone* v. *Gates*, 87 Mich. 332, it is said:

"By gross mistake we mean a mistake which is clearly shown to have left out some of the logs, or increased the scale by a mistake in the tally or in the addition of the amounts on the tally-sheets, or something of that kind, and not an honest error of judgment in the scaler."

It is undisputed that plaintiff shipped by rail and delivered to defendant f. o. b. at Iron Mountain 2,112 logs. Its reports to him showed 1,818 scaled and the remaining 294 logs unscaled and rejected as worthless culls. He does not attempt to dispute the scale of those which were scaled, but based on his own knowledge of the kind and condition of the logs when shipped and his experience as a lumberman and scaler it was competent for him to express the opinion that when they arrived at Iron Mountain 294 of them had not become worthless culls and that it was a gross mistake for defendant's inspector to so find. The facts on which he based such opinion were in direct dispute and the value of his testimony in this and other particulars was guardedly left to the jury by the court with instruction as to applicable rules of law, in part as follows:

"By the terms of the contract, the inspection and scale by the company is controlling. By the terms of the contract, as I say, and in the absence of claim and testimony tending to raise or raising a question that the logs were not scaled and inspected according to the contract or that a gross mistake was made in rejecting these 294 logs, the contract would be controlling and this case would end and be determined as

a matter of law by the direction by the court of a verdict for the defendant.   But the plaintiff claims and has offered in evidence testimony which he claims raises questions of fact whether the logs, those 294, were inspected according to the contract, and he claims that a gross mistake was made by the defendant in rejecting the 294 logs.   By 'gross mistake' in this case is meant a mistake by which it is clearly shown by a preponderance of the evidence that these 294 logs were left out of consideration by the company and not scaled, when they should have been approved by the company inspector and scaler, according to the contract."

While the logs were being shipped defendant sent plaintiff's scale sheet of logs acknowledged as received, showing logs scaled by it and those culled, and from time to time sent him checks.   It is claimed for defendant that by not returning the checks he accepted its scale.   Conceding this was acceptance of the scale of the logs which were accepted and scaled, it was not acceptance of what he claimed was a mistaken rejection of the unscaled logs which defendant kept possession of and sawed up.   That he did protest is fairly shown, although the statement in his counsel's brief that he "wrote the defendant time after time that he was not satisfied," while not disputed, is not sustained by the record before us, which goes no further than a meager reference to letters written by plaintiff's son, to whom is left to inference, and a letter from defendant to plaintiff telling him "these logs were not what they wanted and were not the logs they should be under the contract."

It does appear, however, that plaintiff sent his son and a man named Sante to Iron Mountain to see about the culls, or rejected logs, and a man named Kotila went with them.   Kotila testified that defendant's manager said the logs were "probably down in the yard."   They then went over to the mill yard where the mill superintendent told them all the cars had been

unloaded except one, which they looked at, and he said they were good logs with but two culls, one being split and one with some punk.    When asked where the culls were and what became of them he said they were put in the deck piles and went through the mill. They went back to see the manager and young Gadell protested in their conversation against the report of culls and the manager told him if he would "quit hollering about the culls" they would unload the car, and not otherwise.    On Gadell further protesting, he had the mill office called up and told not to unload the car until further instructions.    They then left. Out of that car load only two logs were culled.    Sante testified that when they asked about the culled logs the manager said "they were sawed up into lumber, no culled logs,   *   *   *   said he wouldn't pay, that the logs were no good."

Defendant's manager testified that Gadell later told them they could unload the logs, that those which they received from plaintiff were "war logs" cut the year before and had gone through the previous summer on skidways where they had deteriorated, while plaintiff testified positively that all those logs were cut the previous winter, from November to March, and "not one log" was shipped that was older.    Evidently one of these witnesses was grossly mistaken, and it was not the province of the court to say which one.

The testimony of the respective sides in this litigation is in conflict upon various other more or less material questions involved, and each side is able to point out certain inconsistencies in the testimony of adverse witnesses.    But it is evident that there is an irreconcilable conflict of testimony as to the quality of the rejected and unscaled logs sent by plaintiff to defendant, admittedly received and run through its mill by the latter and their identity destroyed without keeping any separate description of what they were or the result of sawing them.    No report was made

to plaintiff that these rejected logs were being sawed up by defendant and he first heard of it when his representative went to Iron Mountain to see about them. Under such circumstances, there was no error in admission of the testimony complained of, which carried the case to the jury. Plaintiff not only claimed that the rejected logs complied with the contract and they were accepted by defendant retaining and sawing them, but also for their reasonable market value under the *quantum meruit* count in his declaration. The case was submitted to the jury under a careful charge covering those points.

No reversible error is found and, therefore, the judgment will stand affirmed.

CLARK, C. J., and McDONALD, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.