BILLINGS, Respondent, v. MISSOULA WHITE PINE SASH CO. et al., Appellants.

(No. 6,663.)

(Submitted October 3, 1930. Decided October 29, 1930.)

[292 Pac. 714.]

Messrs. *Murphy & Whitlock, Mr. J. D. Taylor* and *Mr. Thomas N. Marlowe,* for Appellants, submitted a brief; *Mr. A. N. Whitlock* and *Mr. Taylor* argued the cause orally.

*Messrs. O'Hara, Madeen & Grant* and *Mr. Walter L. Pope,* for Respondent, submitted a brief; *Mr. Robert A. O'Hara* and *Mr. Pope* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff seeks recovery of the balance due him from defendant Garnett for hauling lumber from Garnett's mill, located at the mouth of Blackfoot Creek, to Grantsdale spur, in Ravalli county, from December 25, 1926, to March 5, 1927, and to establish and foreclose a lien against the lumber.

The complaint alleges that in 1926 the defendant Missoula White Pine Sash Company, a Washington corporation, hereinafter called a company, entered into a contract with defendant Garnett by the terms of which Garnett agreed to manufacture into lumber certain logs cut from timber belonging to the company and located in Ravalli county; that under the contract the company was to deliver the logs at the sawmill of Garnett, and, after they were sawed into lumber, Garnett was to haul and deliver it on board cars at Grantsdale spur or there pile it in the yards; thereafter, and on June 12, 1926, Garnett entered into a contract with plaintiff, whereby plaintiff agreed to haul the lumber from the mill and load it on cars or pile it at Grantsdale for $3 per thousand feet, payments to be made monthly on the fifteenth day of each month for the lumber hauled the preceding month.

It is alleged that between December 25, 1926, and March 5, 1927, plaintiff handled and delivered on cars and piled in the yards at Grantsdale approximately 1,340,000 feet of lumber for which he was entitled to $4,037.71, no part of which has been paid; that within thirty days after the completion

of the work plaintiff filed his notice and claim of lien on the lumber.

The company answered by general denial, save that it admitted that the contract between it and Garnett was as alleged in the complaint. Garnett, by separate answer, admits the existence of the contracts as alleged in the complaint, and alleges that plaintiff has been paid in full for all lumber hauled by him under the contract between him and plaintiff. Issue was joined by a reply.

The court found for plaintiff and adjudged the claim a lien upon the lumber described in the complaint. Defendants have appealed from the judgment.

Defendants, before trial, demanded and were furnished a bill of particulars. The bill of particulars sets forth the amount of lumber hauled under the contract from its inception, and the cash payments made by Garnett to plaintiff. During the course of the trial, by agreement of the parties, plaintiff was permitted to introduce proof showing the total amount of lumber hauled by him under the contract from the time operations began thereunder in August, 1926, as well as all payments made thereon, in order to arrive at the balance due. By pursuing this method of proof, plaintiff introduced evidence in support of his bill of particulars from which it was shown that the amount alleged in the complaint is still due and unpaid.

The contract under which plaintiff hauled the lumber in question provided that he should be paid $3 per thousand feet, and "that the basis of payment shall be the check of the White Pine Sash Company of Missoula, Missoula county, Montana, as delivered by said company after receipt of each car of lumber shipped to it." It provided further that "payment shall be made on the fifteenth of each month for all lumber hauled and loaded, or piled, * * * during the preceding month."

Plaintiff, to prove the amount of lumber hauled by him, introduced evidence of the log scale of all logs cut and sawed during the period of the contract and added ten per cent as

overrun which his witnesses testified would be the amount of overrun, taking into consideration the size of the logs and the dimensions of the lumber cut therefrom. Defendants objected to the testimony showing the overrun, and, at the conclusion of all of the evidence, defendant company moved for a directed verdict upon the ground that the proof of the amount of lumber hauled by plaintiff was not in conformity with the standard of measurement stipulated in the contract between the parties.

By several specifications of error the question is presented whether the evidence is sufficient to sustain the judgment. Specifically it is contended by defendants that there is no evidence showing the amount of lumber hauled by plaintiff measured as provided in the contract.

The effect of the stipulation in the contract that the basis ██ of payment shall be the check of the White Pine Sash Company was to make that company the scaler for the purpose of determining the amount of lumber hauled by the plaintiff. The rule is that, where the parties have agreed upon a scaler to scale lumber or logs, they are bound by his scale in the absence of fraud, mathematical mistake, or other legal ground of relief. (38 C. J. 199; *Bechard* v. *Amey*, 82 N. H. 462, 136 Atl. 370; *Hanscom* v. *North Anson Mfg. Co.*, 120 Me. 220, 113 Atl. 179; *Gadell* v. *Michigan Iron, Land & Lumber Co.*, 226 Mich. 482, 198 N. W. 242; *Anderson Lumber Co.* v. *Robinson*, 6 La. App. 460; *Connecticut Valley Lumber Co.* v. *Stone*, 212 Fed. 713, 129 C. C. A. 323.)

Plaintiff seeks to avoid the effect of the provision in the contract requiring basis of payment to be upon the scale of the Missoula White Pine Sash Company, by showing that the company never furnished him with a scale, and that a part of the lumber was shipped elsewhere than to Missoula. But the record shows that the company scaled the lumber in the yard each month before it was shipped, and, hence, if some was shipped elsewhere than to Missoula, it was of no importance. The company, it should be noted, had no contract with plaintiff and was under no obligation to furnish plaintiff with the

scale of lumber hauled. Its obligation was discharged by furnishing the scale to Garnett. Plaintiff could have required production of the books of the company by subpoena *duces tecum* to show its scale, and thus established the amount of lumber hauled by him. The burden of proof of the amount of lumber hauled by plaintiff under the contract with Garnett not having been established by competent evidence, the judgment in plaintiff's favor cannot stand.

Ordinarily, in an equity case, this court may direct the entry of the proper judgment. (Sec. 8805, Rev. Codes 1921.) But we may not do so here, for the reason that there is no competent evidence in the record to show the amount of lumber hauled as scaled by the company.

There was evidence introduced by defendants, over plaintiff's objection, showing that the overrun on the lumber sawed under this contract was .0043 per cent. But this was in the nature of secondary evidence and was therefore incompetent. Under the circumstances, we think the cause should be remanded for another trial.

Defendant company contends that in no case is the plaintiff ▆▆▆▆ entitled to a lien on the lumber. The lien is claimed by virtue of section 8319, Revised Codes 1921, which provides: "Every person performing work or labor, or assisting in manufacturing sawlogs and other timber into lumber and shingles, has a lien upon such lumber while the same remains at the mill where it was manufactured, or in the possession or under the control of the manufacturer, whether such work or labor was done at the instance of the owner of such logs or his agent, or any contractor or subcontractor of such owner. The term lumber, as used in this Act, shall be held and be construed to mean all logs or other timber sawed or split for use, including beams, joists, planks, boards, shingles, laths, staves, hoops, and every article of whatsoever nature or description manufactured from sawlogs or other timber."

The company contends that a person employed as plaintiff was here—to haul the lumber from the mill to Grantsdale

spur—is not thereby "assisting in manufacturing sawlogs and other timber into lumber" within the meaning of the statute.

The statute creates a new right, and for one to secure its benefits he must show that he is within the class intended to be favored. (*Lane* v. *Lane Potter Lumber Co.*, 40 Mont. 541, 107 Pac. 898.) Unless plaintiff's evidence shows that his work or labor was that of assisting in manufacturing the logs or timber into lumber, he is not entitled to a lien on the lumber. It has been held, under statutes substantially the same as ours, that a claim for labor for hauling fence posts after they have been manufactured is not lienable. (*Ryan* v. *Guilfoil*, 13 Wash. 373, 43 Pac. 351.) Plaintiff asserts that the Washington court refused to follow the *Ryan Case* in the later cases of *O'Brien* v. *Perfection Pile Preserving Co.*, 49 Wash. 395, 95 Pac. 489, and *Forsberg* v. *Lundgren*, 64 Wash. 427, 117 Pac. 244. In the *O'Brien Case* the work consisted in hauling timber before it was cut into lumber, while in the *Forsberg Case* the lien claimants performed work in cutting railroad ties in the woods. In neither case was the lien claimed for work in hauling lumber after it was manufactured, and, hence, the court properly declined to apply the rule of the *Ryan Case*.

In *Villenuve* v. *Sines*, 92 Mich. 556, 52 N. W. 1007, 1008, the court had under consideration a statute giving a lien to "any person or persons who perform any labor or services in manufacturing lumber." The court, in holding that the statute does not give a lien for hauling lumber from the mill to the railroad for shipment, said: "The statute covers only labor or services in manufacturing lumber. * * * The manufacture was complete when the logs were sawed into lumber, and the lumber piled in the yard. The statute gives a lien for hauling logs, timber, etc., but does not include the hauling of the product into which logs and timber are manufactured." This decision was followed by the supreme court of Wisconsin in the case of *McGeorge* v. *Stanton-DeLong Lumber Co.*, 131 Wis. 7, 110 N. W. 788, where it was held that

there is no lien for hauling manufactured lumber. To the same effect is *Mitchell* v. *Page,* 107 Me. 388, 78 Atl. 570.

Plaintiff attempts to avoid the force of these decisions by the assertion that a different rule obtains when it is made to appear, as here, that there is no place at the mill to pile the lumber. The only case that has been called to our attention where this circumstance existed is that of *Abernathy* v. *Peterson,* 38 Idaho, 727, 225 Pac. 132, 135. In that case the statute provided for the lien on lumber "while the same remains at the mill where manufactured." The court held that the term "at the mill" would include a lumber-yard adjacent to the railroad where the lumber was hauled and piled. The question whether a claim for the work of hauling the lumber was lienable was not involved in that case because the hauling was alleged to have been done by the owners of the lumber.

It is worthy of note that the supreme court of Oregon held, in *First National Bank of Union* v. *Wegener,* 94 Or. 318, 181 Pac. 990, 186 Pac. 41, that lumber cannot be said to be "at the mill" and subject to a lien when it has been hauled twelve miles from the yard where it was manufactured. In that case it does not appear whether there was room to pile the lumber at the place where sawed. But the question whether the lumber involved here is still "at the mill" when removed to the spur cannot arise under our statute, since a lienable claim remains so as long as the lumber is "in the possession or under the control of the manufacturer."

The difficulty here is that the plaintiff's claim is for work in hauling the manufactured lumber and is not for work performed in assisting in the manufacture of lumber. We think it cannot be said that the work of hauling the lumber to the Grantsdale spur had anything to do with the manufacture of the lumber. That work was done as a necessary part of the transportation of the lumber from the mill to the company's place of business in Missoula. If this claim is lienable, then a claim for hauling from the mill to Missoula would likewise have been lienable, and, if that be possible, then, had the company's place of business been in Minneapolis instead of in

Missoula, a claim for services in transporting the lumber from the mill to Minneapolis would also be lienable. This cannot be so. The statute does not afford a lien for labor performed in the transportation or hauling of lumber.

Conceding that the claim for work in hauling the lumber to an accessible place for piling is lienable under our statute, there is nothing in the record to indicate that Grantsdale spur, which is twelve or fifteen miles from the mill, was the nearest place to the mill accessible for piling the lumber. If a claim for the work in hauling this lumber part of the way from the mill to the spur were properly lienable as a part of the manufacturing process, there is nothing in the record to indicate what part of the hauling was necessarily incident to getting the lumber away from the mill, and what part constituted a part of its transportation after manufacture. The rule is that, where a lien is claimed for the amount due for labor, part of which is lienable and part not, and where there is no proof from which the separation may be made with reasonable certainty, the entire claim for a lien must be denied. (*McGeorge* v. *Stanton-DeLong Lumber Co.*, supra; *Mitchell* v. *Page,* supra.)

The court erred in holding that the claim of plaintiff constitutes a lien upon the lumber hauled by him. Since the action must be again tried, other questions presented may be eliminated by asking and obtaining leave to amend the pleadings.

On cross-examination of plaintiff, as well as by defendants' witnesses, defendants, over plaintiff's objection, were permitted to show that, while plaintiff was operating under the contract in question, his men were boarded by Garnett at a fixed price per meal, and that other items of merchandise were charged to plaintiff by Garnett, including slabs that plaintiff purchased from Garnett. The plaintiff thereupon showed that these credits were applied by him upon a prior indebtedness which he asserted existed in his favor against Garnett and which arose in 1924 and 1925, under different contracts than the one relied upon in the complaint.

It is contended by plaintiff that, without a special plea by defendant Garnett that full payment had been made to plaintiff, partly by cash and the balance by furnishing meals, slabs, and other items of credit, it was improper to receive evidence of such credits. We think this contention must be sustained. Under section 7429, Revised Codes 1921, performance of an obligation for the delivery of money only is called payment. In view of this statute an agreement to accept property, or something other than money, in satisfaction of an obligation must be specially pleaded. (*Lappin* v. *Martin*, 71 Mont. 233, 228 Pac. 763; *Harrington* v. *Kempton*, 54 S. D. 60, 222 N. W. 498.) Should defendant Garnett ask and obtain leave to amend the answer so as to plead payment by credits other than cash, plaintiff may then by appropriately amending his reply show that, in the absence of any particular application of the credits by Garnett, they were applied in payment of a prior indebtedness. (Sec. 7430, Rev. Codes 1921; *Engi* v. *Hardell*, 123 Wis. 407, 100 N. W. 1046.)

For the reasons stated, the judgment is reversed and the cause remanded for a new trial as to defendant Garnett; as to the company, the action is ordered dismissed.

Mr. Chief Justice Callaway and Mr. Justice Ford concur.

Associate Justices Matthews and Galen, being absent, did not hear the argument and take no part in the foregoing decision.