MANLEY C. MITCHELL vs. ASAHEL D. PAGE et als.

ALLIE MITCHELL vs. ASAHEL D. PAGE et als.

Piscataquis.   Opinion December 15, 1910.

*Logs and Lumber.   Liens.   Manufactured Lumber.   Statute, 1848, chapter 72;
1907, chapter 21; chapter 25 ; 1909, chapter 96 ; chapter 97.   Revised Statutes,
1857, chapter 91, section 19 ; 1903, chapter 93, sections 46, 50, 51, 52.*

Revised Statutes, chapter 93, section 46, provides that "whoever labors at
cutting, hauling, rafting or driving logs or lumber, or at cooking for per-
sons engaged in such labor, or in shoeing horses or oxen, or repairing
property while thus employed, has a lien on the logs and lumber for the
amount due for his personal services and services performed by his team,"
etc.   *Held :*   That this statute gives no lien for cutting or hauling manu-
factured lumber.

Where one suing to enforce a lien for services in cutting and hauling logs
given by Revised Statutes, 1903, chapter 93, section 46, so intermixed such
services with the nonlien labor of firing a sawmill boiler, cutting up slabs,
and hauling and sticking manufactured lumber, that it was impossible for
him, at the trial to make any separation or for the court, from the evidence,
to make any such distinction as would authorize a judgment for lien for
any definite amount, the lien must fail.

Revised Statutes, 1903, chapter 93, section 46, gives to any person laboring
at cutting, hauling, or driving lumber, etc., a lien thereon for the amount
due for his personal services, which lien shall continue 60 days after the
lumber, etc., subject thereto shall have arrived at the place of destination
for sale or manufacture.   *Held*, that where the place of destination for
manufacture of logs was at a sawmill and no labor was performed by one
seeking to enforce a lien under the section, in hauling logs to the mill after
December 1, 1908, he was not entitled to a lien thereon, where his action
was not begun until June 16, 1909.

*Hutchins* v. *Blaisdell*, 106 Maine, 92, overruled in part.

On report.   Lien judgment denied.

Two actions of assumpsit against the principal defendant and the
Guilford Manufacturing Company as trustee and also alleging that
the plaintiffs had a lien on certain manufactured lumber and seek-

ing to enforce such lien. The Guilford Manufacturing Company appeared as owner of the lumber, pleaded the general issue in each action together with a brief statement alleging that it was the owner of the lumber and denying that "there was or is any lien on said lumber," as set out in the writs. At the conclusion of the evidence the case was reported to the Law Court for determination.

The case is stated in the opinion.

Note. See *Hutchins* v. *Blaisdell*, 106 Maine, 92, which is overruled in so far as it conflicts with the decision in the case at bar.

*J. S. Williams,* for plaintiffs.

*Hudson & Hudson,* for Guilford Manufacturing Company.

SITTING: EMERY, C. J., SAVAGE, PEABODY, SPEAR, CORNISH, KING, BIRD, JJ.

CORNISH, J. These two actions of assumpsit, both brought by the father Manley C. Mitchell, one in his own name, and the other as next friend of his minor son Allie C. Mitchell, to enforce lien claims under R. S., ch. 93, sec. 46, are reported to this court for final determination.

They squarely raise the question whether under this statute a lien is given for cutting or hauling manufactured lumber. A careful study of the statute and its history leads to the conclusion that such lien is not thereby created.

The original statute, chap. 72 of the Pub. Laws of 1848 reads as follows:

"Sect. 1. Any person who shall labor at cutting, hauling or driving logs, masts, spars or other lumber, shall have a lien on all logs and lumber he may aid in cutting, hauling or driving as aforesaid, for the amount stipulated to be paid for his personal services, and actually due. And such lien shall take precedence of all other claims except liens reserved by the state of Maine or the commonwealth of Massachusetts for their own use, and the lien shall continue sixty days after the logs, masts, spars or other lumber subject thereto shall have arrived at their place of destination, previous to being rafted for sale or manufacture."

In the revision of 1857, without any intervening legislation upon the subject, the first lines of this section were condensed to "Any person who labors at cutting, hauling or driving logs, or lumber, shall have a lien," and the words "previous to being rafted," between "destination" and "for sale or manufacture" were omitted. But this change of phraseology in the revision neither necessarily nor presumptively indicates any change of legislative will or inten-tion. *St. George* v. *Rockland*, 89 Maine, 43; *Taylor* v. *Caribou*, 102 Maine, 401. By chapter 135 of the Pub. Laws of 1868, the word "rafting" was inserted after "hauling" and with some minor additions by subsequent amendments which are not involved in the case under discussion, the language of the Revision of 1857 is the language of the present statute. R. S., 1903, ch. 93, sec. 46, viz:

"Whoever labors at cutting, hauling, rafting or driving logs or lumber, or at cooking for persons engaged in such labor, or in shoeing horses or oxen, or repairing property while thus employed, has a lien on the logs and lumber for the amount due for his personal services and the service performed by his team, which takes precedence of all other claims except liens reserved to the state; whoever both shores and runs logs by himself his servants or agents, has a lien thereon for the price of such shoring and running; such liens continue for sixty days after the logs or lumber arrive at the place of destination for sale or manufacture, and may be enforced by attachment."

The word "lumber" in its broadest use includes both the manufactured and the unmanufactured product. We speak of a lumber dealer, meaning a dealer in manufactured lumber, and again of a lumber operator having reference to the man who cuts, fells and hauls the trees, and the verb "to lumber" is usually confined to the latter meaning.

While therefore the term is broad enough in its common acceptance to include the manufactured product as boards, planks and dimension timber, yet it should be construed in the present statute in the light of the original enactment of 1848, and so construed its meaning is plain. "Logs, masts, spars or other lumber," means

other lumber ejusdem generis, in a condition similar to logs, masts and spars, that is felled but not manufactured, whether designed for ultimate manufacture, as are logs, or not to be manufactured as are spars and masts. *Lyndon* v. *Starbridge*, 2 H. & N. 45. An illustration of "other lumber" of the same kind to which the lien attaches is the "cedar shingle rift" cut four feet long and then hauled to the mill, in *Sands* v. *Sands*, 74 Maine, 239, where the court say, "If felled and hauled whole there could be no question about it, and sawing the logs into four feet sticks for convenience in hauling and handling cannot destroy the lien."

That the lien must attach prior to the manufacture is also indicated by the clause limiting the duration of the lien to sixty days after the logs or other lumber "arrive at the place of destination for sale or manufacture," and especially in its original phraseology "shall have arrived at their destination previous to being rafted for sale or manufacture." This would have no application to lumber already manufactured. It necessarily contemplates the wood in bulk.

Consistently with this view the legislature has from time to time created new liens, as necessity required, on manufactured wood products not embraced in the term logs or lumber as here defined. Thus in cutting, peeling, hauling or yarding hemlock bark, and cutting, hauling or yarding cord wood, or pulp wood or any wood used in the manufacture of pulp wood, R. S., ch. 93, sec. 50, Pub. Laws 1907, ch. 21; in manufacturing last blocks or cutting or furnishing wood for the same or furnishing teams for the hauling of the blocks or the lumber from which they are manufactured, R. S., ch. 93, sec. 51; in the manufacture of railroad ties and ship knees; R. S., ch. 93, sec. 52; in the cutting, hauling or sawing of spool timber or manufacture of spool timber into bars, R. S., ch. 93, sec. 53; in cutting, hauling or sawing of shingle, stave, lath or dowel timber or in the manufacture of the same, Pub. L. 1907, ch. 23, Pub. L. 1909, ch. 97; in making shovel handle blocks or in cutting or furnishing wood for shovel handle blocks, Pub. L. 1909, ch. 96.

It remains for the legislature to create a lien for cutting and hauling manufactured lumber as is claimed in the case at bar. The existing statutes do not permit it.

The plaintiff was justified in citing *Hutchins* v. *Blaisdell*, 106 Maine, 92, as an authority in his favor. No other conclusion can be drawn from the opinion in that case. It should be said, however, that the question involved here, of the existence or non-existence of a lien for hauling manufactured lumber was not controverted in that case. Such lien was assumed to exist and was neither contested by counsel nor investigated by the court. The only issues presented and decided were whether the statute also granted a lien for "sticking" lumber and whether the writ could be amended to cover the hauling only, the first of which was decided in the negative and the second in the affirmative. In so far therefore as the decision in the case at bar is in conflict with *Hutchins* v. *Blaisdell*, supra, the latter is distinctly overruled. Applying the statutory construction herein adopted to the facts in the two cases under consideration we reach the following results.

In the case of Manley C. Mitchell, the plaintiff seems to have rendered some service both himself and with his team in hauling the logs from the woods to the portable saw mill for manufacture, a service which carries a lien. But he has so intermixed and interwoven these services with the non-lien labor of firing the boiler, cutting up slabs and hauling and sticking manufactured lumber, that it was impossible for him at the trial to make any separation, and it is equally impossible for the court after a careful examination of the evidence to make any such distinction as would authorize a judgment lien for any definite amount. The lien in this case therefore fails. *Baker* v. *Fessenden*, 71 Maine, 292; *Kelley* v. *Kelley*, 77 Maine, 135. In the case of Allie C. Mitchell, there is sufficient evidence to authorize a judgment lien because the plaintiff testified that one-third of his whole time was spent in hauling logs from the woods to the mill. But this claim, as well as the father's, is met by the further objection that the remedy was sought too late. The lien continues only for sixty days after the logs or lumber arrive at the place of destination for sale or manufacture. The place

of destination for manufacture of logs cut for the portable mill in this case was, so far as the evidence shows, at the mill yard. In case of driven logs, it is far short of that, as on the Penobscot river it is at the Penobscot boom. *Sheridan* v. *Ireland*, 66 Maine, 65. No labor was performed by this plaintiff in hauling logs to the mill after Dec. 1, 1908, while the action was not begun until June 16, 1909, more than four months after the lien expired. For this reason no judgment lien can be ordered in this suit.

The entries must therefore be, in *Manley C. Mitchell* v. *Asahel D. Page et als.*, personal judgment for the plaintiff for $104.57, with interest from the date of the writ and costs; and in *Allie Mitchell* v. *Same*, personal judgment for the plaintiff for $102.20 with interest from date of the writ and costs.

*So ordered.*