[Civ. No. 9436. Third Dist. Feb. 20, 1959.]

J. D. MOREHOUSE et al., Appellants, v. SHIPMAN LUMBER SERVAES COMPANY (a Corporation) et al., Defendants; ROUNDS LUMBER COMPANY (a Corporation), Respondent.

Mayes & Courtney and Don C. Mayes for Appellants.

Doyle & Clecak and William P. Clecak for Respondent.

VAN DYKE, P. J.—Plaintiffs and appellants appeal from those portions of a judgment which were in favor of the defendant and respondent Rounds Lumber Company, hereinafter called "Rounds," adjudging that the appellants had no loggers' liens against certain lumber found by the trial court to belong to Rounds and to be located in an area within the lumber yard of the defendant Shipman Lumber Servaes Company, a corporation, hereinafter called "Shipman," at Merced, California, the area being referred to in the proceedings as the "Lawrence Warehouse area." Plaintiffs brought action against Shipman Lumber Servaes Company, for services rendered and sought to impress a lien upon the lumber. They obtained judgment against Shipman, but the court denied the liens. Shipman has not appealed.

Appellants Morehouse, Cornwell, Kuykendall and Little were loggers and small mill operators working in the woods in Madera County. All of them performed various services in that county on logs from trees felled in the woods by Shipman. Almost as soon as the trees were felled they were sawed

into log lengths and the logs were either trucked directly to the Shipman mill at Merced or were "canted" in the woods, that is, slabbed on one or more sides, then trucked to the mill. Since, with a few exceptions, all the work for which loggers' liens were claimed was performed in Madera County and since the logs and cants were then taken out of that county and into Merced County, the basic controversy herein arises under the claim of Rounds that under the lien statute the liens were lost when the logs and cants were moved out of Madera County. We shall consider that contention first.

Section 3065 of the Civil Code provides that: "Any person who shall, by his own labor, or by using his livestock, machinery or appliances, or both, do or perform any work or render any service in connection with felling, preparing or transporting any logs, or in manufacturing lumber or other timber products from such logs, . . . shall have a lien upon any and all of such logs and upon any and all of the lumber and other timber products manufactured therefrom, whether said work was done or service was rendered on the logs themselves, or any of them, or in manufacturing the lumber or other timber products from them, . . ."

Section 3065a of the Civil Code provides as follows: "The lien created by the last preceding section shall continue in force for a period of thirty days from the time the person claiming such lien shall have ceased to do or perform the work or render the service for which said lien is claimed, while such logs, lumber or other manufactured timber products are in the county in which such labor was performed or service rendered, and said lien shall cease at the expiration of the said thirty days unless the claimant thereof, . . . brings suit to foreclose the same, in which case the lien continues in force until the said lien foreclosure suit is finally determined and closed, . . . If any part of the property on which the lien existed is removed from the said county, the lien continues on the balance remaining in the county to the full extent of the claim."

Section 3065 was adopted in 1905 and amended in 1927. Section 3065a was added in 1927. The latter section appears to have been the subject of appellate decision only once and that was in the case of *Virden* v. *Neese*, 66 Cal.App.2d 724 [152 P.2d 761]. As to the effect on the lien of the removal of logs or lumber out of the county wherein the work was done, the decision by an obiter dictum states that the lien

ceases on removal from the county where the work was done. Bearing in mind the well-settled law that labor liens are remedial in character, must be liberally construed to effect their purpose, and are particularly favored in equity, we have studied the statute with care. We think the language of the statute admits of no construction save that it declares a loggers' lien is lost when the logs or lumber worked upon are removed from the county where the work was done. We are aware that this construction, as of today, renders the statute largely ineffective. It is common knowledge that the method of handling logs and the manufacture of logs into lumber has changed radically with the advent of powerful trucking equipment and powerful machinery for use in the woods. Instead of mills located in the woods whereby the process of making lumber was carried at least to the point of rough lumber manufacture before the materials were hauled out, it is now common for the trees to be felled, prepared for shipment and then trucked as logs or cants to centrally-located mills that may be hundreds of miles from the point where the trees were felled. As the industry is now conducted loggers' liens limited to the county where the work is done are often lost before the next payday of the laborer. These considerations, however, do not justify a distortion by way of construction of plain legislative provisions. Any needed change in the legislation is for the Legislature.

At the time the loggers' liens here under discussion arose a contract existed between Shipman and Rounds whereunder Shipman agreed to sell and Rounds agreed to purchase all of Shipman's output at its Merced mill of certain grades and types of lumber, specifically "the entire output of No. 2 Common through Moulding and better, Ponderosa Pine and Sugar Pine," and "the entire output of No. 3 Shop and better of California Red and White Fir." The agreement provided that Rounds pay Shipman 80 per cent of the market value of such lumber at the time it was produced, that the lumber so purchased by Rounds under the said contract be placed in a field warehouse in a separate location in Shipman's yard at Merced, and that, as soon as the lumber was placed in the warehouse, title to such lumber passed to Rounds. From time to time Rounds sold the warehoused lumber to various customers throughout California. Under the agreement when lumber was warehoused Lawrence Warehouse Company issued to Rounds negotiable receipts for the lumber received into the warehouse area. As Rounds sold, the lumber

was released to Shipman who then transported the lumber to the purchaser.

Concerning these matters the trial court found that the lumber sought to be liened by the plaintiffs was lumber owned by Rounds and located in the Lawrence Warehouse area of the Shipman lumber yard. There is no challenge to the sufficiency of the evidence to support these findings. The trial court also found that the work and services done and performed by Morehouse, Cornwell and Sons, Kuykendall and Little were all done and performed in Madera County after which the logs and cants upon which their services were performed were removed from that county before their liens were filed or this action was begun. There is no challenge as to the sufficiency of the evidence to support these findings also. Under the findings related and under our interpretation of the loggers' lien statutes the above named plaintiffs had no lien upon the lumber belonging to Rounds.

Appellant Sario was a trucker working for Shipman. He hauled logs from Madera County to Shipman's mill in Merced. Hansen's claim was based upon like services. Watkins' claim falls into two classifications. A part of it was for trucking cants from the Madera County woods to Shipman's mill. The balance of his claim was for hauling lumber from Merced and we will treat of that portion of his claim separately. It is obvious that Sario, Hansen and Watkins, for hauling logs and cants from the Madera County woods into Merced County and to Shipman's mill, would have a claim of lien at least for that portion of the service rendered within Merced County unless for some reason they failed to establish their liens at the trial. As heretofore stated, plaintiffs sought to establish their liens on lumber belonging to Rounds and situated in the Lawrence Warehouse area. The basis for the trial court's denying them any lien upon Rounds' lumber was that they had failed to establish and prove that the products of the logs and timber upon which they performed work and rendered services were in the lumber located in the same Lawrence Warehouse area belonging to said Rounds Lumber Company.

As heretofore stated, the agreement whereunder Rounds purchased lumber from Shipman did not provide that Rounds should buy all of the lumber manufactured by Shipman at its Merced mill. The agreement was limited to specified types and grades of lumber. It was in evidence that during the logging season 60 per cent of the logs delivered to Shipman's

mill came from sources other than those upon which the appellants performed labor or services, and that as received at the mill all logs and cants were intermingled without regard to source. It was also shown that Shipman followed no particular method or schedule in selecting logs or cants for cutting into lumber, but simply cut whichever were the most convenient from time to time. Shipman testified as to the plan of operation at the mill and the testimony was that the logs and cants to be cut into lumber were selected without regard to origin and that as the lumber was made the boards produced were intermingled. The lumber was graded on the ''green chain'' by graders placed there for that purpose and the result of grading was that the lumber was further mixed. Finally, the varying grades were removed and stacked in the yard according to grade and species. Some of it went into the Lawrence Warehouse area for Rounds and some of it remained in the yard for sale and disposal otherwise by Shipman. The record supports the conclusion, and the parties appear to be in agreement, that for the individual lien claimant it would have been extremely difficult, if not practically impossible, to have proved that the lumber in the warehouse area belonging to Rounds came from the logs and cants upon which he had performed labor. So far, therefore, as the proof went the finding of the court that claimants had not shown that the logs and cants upon which they had labored had been made into the lumber that went to Rounds is supported factually by the record.

Appellants contend that since the logs and cants were mixed in the yard regardless of source and the lumber sawed therefrom was further mixed in grading and distribution they are entitled by reason of this mixing to lay their liens upon the whole of the lumber belonging to Rounds and located in the warehouse area at the time they filed their claims of lien and began this action. They argue that Shipman could not destroy their liens by intermingling the logs and cants and the lumber produced therefrom. It is unnecessary to determine whether or not this claim would be good against Shipman. Claimants were not endeavoring to establish a lien against lumber belonging to Shipman. They were endeavoring to establish liens upon the lumber belonging to Rounds. It was not shown that Rounds was in any way responsible for or could have controlled or prevented the intermingling of logs and cants or the mixing of the grades of lumber without regard to source. By Rounds' contract with Shipman it agreed to

take certain specified kinds and grades of lumber produced by Shipman without regard to the source of the logs or cants from which the same were cut. Rounds therefore was not estopped to claim that, so far as the lumber belonging to them and located in the warehouse area be concerned, the burden was upon the appellants to establish their lien upon it by showing that it constituted the product of the logs and cants upon which they had bestowed labor.

As we have said, a part of Watkins' claim of lien was for hauling manufactured lumber from Merced to Loomis, Placer County, for remanufacture. The statute does not give a loggers' lien for such services. The lien is given to any person "who shall . . . do or perform any work or render any service in connection with felling, preparing or transporting any logs, or in manufacturing lumber or other timber products from such logs . . ." Such person, says the statute, "shall have a lien upon any and all of such logs and upon any and all of the lumber and other timber products manufactured therefrom, whether said work was done or service was rendered on the logs themselves, or any of them, or in manufacturing the lumber or other timber products from them . . ." The lumber hauled to Loomis by Watkins was lumber belonging to Rounds located in the warehouse area and under negotiable warehouse receipts. So far as the record shows, it did not differ in quality or kind from other lumber purchased by Rounds from Shipman and thereafter sold into the consuming market. However, it appeared that this lumber was released from warehouse certificates to Shipman and that Shipman employed Watkins to haul it to Loomis for remanufacture. As to that lumber, if the statute gave to Watkins a loggers' lien for hauling it then he should have judgment to that effect since there appears to have been no lack of identification in the Loomis yard. But we think the statute did not give a lien for hauling lumber as such after it had been manufactured to a point where it was prepared for consumption merely because the person who purchased it wanted to have it hauled to another point for remanufacture. While, as stated, we have no California authority on the point, yet similar statutes in other jurisdictions have been so construed. (See *Villenuve* v. *Sines*, 92 Mich. 556 [52 N.W. 1007]; *McGeorge* v. *Stanton-De Long Lumber Co.*, 131 Wis. 7 [110 N.W. 788]; *Mitchell* v. *Page*, 107 Me. 388 [78 A. 570]; *Billings* v. *Missoula White Pine Sash Co.*, 88 Mont. 322 [292 P. 714].)

Those portions of the judgment appealed from which deny loggers' liens are affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied March 18, 1959, and appellants' petition for a hearing by the Supreme Court was denied April 15, 1959.