229 Cal.App.2d 105 (1964)
DIVISION OF LABOR LAW ENFORCEMENT, Plaintiff and Respondent,
v.
SISKIYOU MILLS, Defendant and Appellant.
Civ. No. 10751. 
California Court of Appeals. Third Dist. 
Aug. 11, 1964.
 Tebbe & Correia and J. P. Correia for Defendant and Appellant.
 Samuel S. Berman, Leon E. Gold and Douglas M. Phillips for Plaintiff and Respondent. *107
 FRIEDMAN, J.
 Defendant W. H. Rasor & Sons, Inc., was a logging contractor which undertook to conduct logging operations in Siskiyou County for defendant Siskiyou Mills. On July 28, 1962, Rasor ceased operations, owing $4,153.24 to its employees for services performed in cutting Siskiyou's logs. The employees assigned their wage claims to the Division of Labor Law Enforcement of the State Department of Industrial Relations. On August 9, 1962, the division filed the present action in the Siskiyou County Superior Court, seeking foreclosure of loggers' liens pursuant to Civil Code sections 3065 and 3065a. [fn. 1] Both W. H. Rasor & Sons, Inc., and Siskiyou Mills were named as defendants. *108
 At the termination of Rasor's logging operations and at the commencement of this suit, cut logs remained in the woods where they had been felled in more than adequate quantity to cover the wage claims. The logs remained where felled at least through August 22, 1962, when a notice of attachment was served on an employee of Siskiyou Mills. The sheriff, however, did not take physical possession of the logs or place a keeper in charge. During the fall and winter of 1962 and before trial of the action Siskiyou Mills cut the logs into lumber, which was then shipped out of Siskiyou County.
 The trial court found that Siskiyou Mills was the owner of the logs at the time the work was done; that all plaintiff's assignors were entitled to loggers' liens; that suit had been filed within the 30-day period prescribed in section 3065a; that by cutting the logs and shipping the lumber out of the county Siskiyou Mills had destroyed the liens, made them worthless and unjustly enriched itself at the expense of the lien claimants. Siskiyou Mills appeals from a joint and several money judgment against it and W. H. Rasor and Sons, Inc.
 On appeal, Siskiyou Mills' theory is that section 3065a contemplates termination of loggers' liens when the logs or lumber are removed from the county, whether removal occurs before or after commencement of a lien foreclosure action; that the remedy of the lien claimant is purely in rem; that the claimant may preserve his lien by preventing removal of the logs through an attachment; if he does not attach, the owner of the logs incurs no personal liability by processing the logs and shipping the lumber in the ordinary course of business. The Division of Labor Law Enforcement makes no claim that its attempted levy amounted to a valid attachment. *109
 Common law liens and some kinds of California statutory liens are dependent upon the lienor's possession of the subject matter. (See 31 Cal.Jur.2d, Liens, 8, pp. 236-237.) [1] The logger's lien provided by Civil Code section 3065 does not depend upon possession or notice. Section 3065a gives the logger's lien an initial lifetime of 30 days from cessation of work and while the logs or products remain in the county where the work was performed. Institution of a foreclosure suit before expiration of 30 days renews the life of the lien, extending it timewise to final determination of the lawsuit. [2] Quite plainly, if the owner ships the logs or lumber out of the county before a foreclosure action is commenced, the lien is lost. (Morehouse v. Shipman Lumber Servaes Co., 168 Cal.App.2d 135, 138 [335 P.2d 496]; see also, Virden v. Neese, 66 Cal.App.2d 724, 730 [152 P.2d 761].) The statute does not clearly indicate whether the products' continued presence in the county of origin is a necessary condition of lien continuance once suit is instituted.
 [3] Determination of that question is not necessary to our decision. Whichever way the statute is construed, the logs on which plaintiff's assignors had worked were still in Siskiyou County when this foreclosure action was commenced. Thus they remained subject to plaintiff's liens, which were extended in time by commencement of the action. Section 3065 declares that a logging contractor is the owner's agent for the purpose of burdening the logs with wage liens. Siskiyou Mills put the contractor to work on its timber, thus voluntarily subjecting its logs to liens for the services of the contractor's employees. (Holt Mfg. Co. v. Collins, 154 Cal. 265, 270 [97 P. 516].) The logs in Siskiyou Mills' possession and ownership were burdened with a security interest for the benefit of the wage claimants hired by Rasor as its statutory agent.
 [4a] When the foreclosure action was commenced, Siskiyou Mills became aware, if it was not already aware, that Rasor was in financial trouble and owed wages to its workingmen. Siskiyou had under its control logs of a known aggregate value, subject to the liens and constituting security for unpaid wage claims whose aggregate amount was also known. Siskiyou might have retained a minimum inventory adequate to meet the wage claims as ultimately determined in the foreclosure action. Without retaining this minimum inventory *110 and fully conscious of the liens created by its own agent, Siskiyou deliberately cut, sold and shipped the entire lot. If this course of action destroyed the wage liens as a matter of law, it demolished the claimants' security for unpaid wages. If it did not destroy the liens as a matter of law but only made them impractical or impossible of enforcement, it demolished the value of the security. The economic loss to the claimants was the same in either case. Under either interpretation of the statute Siskiyou's deliberately chosen course of action destroyed or rendered fruitless the security which the Civil Code provisions provided the unpaid wage claimants.
 [5] The owner of property who diminishes its value or sells or destroys it to the damage of a lienholder may be liable to the latter on a conversion theory. (Mills v. Brown, 205 Cal. 38, 40-41 [269 P. 636]; Taylor v. S & M Lamp Co., 190 Cal.App.2d 700, 712 [12 Cal.Rptr. 323]; Bastanchury v. Times-Mirror Co., 68 Cal.App.2d 217, 236 [156 P.2d 488]; McCaffey Canning Co., Inc. v. Bank of America, 109 Cal.App. 415, 424 [294 P. 45]; 14 C.J.S., Chattel Mortgages, 214, p. 816; sec. 261, p. 816.) [4b] Frequently availability of an action for conversion turns on the plaintiff's right to possession of the chattels. Loggers' liens, as we have noted, are not possessory. It is unnecessary to decide whether Siskiyou's course of action amounted to a conversion in strict theory. The wage claimants had an enforceable right which Siskiyou Mills deliberately and knowingly destroyed. The destruction of this right entitles the lienholders to damages. Whether this entitlement is premised on tort, contract or trust theory is of little importance, since the damages are the same under any theory. Siskiyou Mills was bound, regardless of contract, to abstain from injuring the wage claimants or infringing upon any of their rights. (Civ. Code, 1708.) By deliberately indulging in injurious action Siskiyou committed a wrong for which the law provides a remedy. (Civ. Code, 3523.) Its deliberate destruction of the liens or their value was tortious, and it is liable in damages. (Taylor v. S & M Lamp Co., supra, 190 Cal.App.2d at pp. 705-712.) The plaintiff's entitlement to damages has its source in the destruction of a valuable right and is not dependent on possession of the chattels. (Wolfsen v. Hathaway, 32 Cal.2d 632, 644 [198 P.2d 1].)
 [6] Alternatively, Siskiyou's financial interest in the logs was subject to a charge for the aggregate amount of the wage *111 liens; by selling the lumber and pocketing the entire price, Siskiyou Mills unjustly enriched itself and impoverished the wage claimants. The law fastens on Siskiyou a quasi-contractual obligation to restore the wage claimants to their former position by paying the money equivalent of the liens. (See Ward v. Taggart, 51 Cal.2d 736, 741 [336 P.2d 534]; Rest., Restitution, 131.) [7] A third alternative is a trust fund theory. Section 2224 of the Civil Code provides that one "who gains a thing by ... wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." The last theory is consistent with decisions holding that where the owner of lien-subject property wrongfully sells it, the proceeds stand in place of the thing sold and the lien attaches to the proceeds. (53 C.J.S., Liens, 12, p. 859.)
 Siskiyou Mills urges that the lien statute does not prohibit it from putting an end to the liens or from sawing the logs or shipping them from the county where cut; that it occupies the same position as a lumber operator who trucks his logs from the county or saws and sells them before commencement of a foreclosure suit. It is this circumstance, awareness of the commencement of a foreclosure action, which creates the difference between a rightful and wrongful disposition of the lien-subject property. In the ordinary course of business a timber owner is engaged in a continual process of cutting, shipping, milling and selling. The logging may be conducted by a contractor, but when business proceeds "as usual" there is no reason to expect that the contractor's employees are not getting their wages. Routine cutting and milling operations involve the cyclical creation and physical removal of lien-subject logs and lumber. There is no unjust enrichment, nothing tortious in this ordinary course of business. Dealing with the situation as its exists before commencement of a foreclosure action, the Morehouse case, supra, 168 Cal.App.2d at page 138, points out that the advent of powerful trucking equipment has permitted location of sawmills at long distances from the forests where the logs are cut, and: "As the industry is now conducted loggers' liens limited to the county where the work is done are often lost before the next payday of the laborer." (See also, Virden v. Neese, supra, 66 Cal.App.2d at p. 731.) *112
 [8] The institution of a lien foreclosure suit creates a radical change in the practical and moral relationship of the parties. At that point the owner knows that his contractor is in financial trouble, that workmen are unpaid, that they look to the logs or lumber in his hands as primary security for their wage claims. He knows the total amount of the wage claims in relation to the price tag of the lien-subject inventory on hand. He may cut and ship lumber down to the amount of the wage claims without harming the claimants. (Virden v. Neese, supra, 66 Cal.App.2d at pp. 729-730.) When he ships more than that quantity, he deliberately puts beyond the claimants' reach the principal security for their unpaid wages. Conjecture and the possibility of surprise are over. The damage inflicted on the wage claimants is inflicted with open eyes. If the owner disposes of the minimum inventory necessary to meet the wage claims to be fixed in the foreclosure suit, he fails in the obligation imposed upon him by Civil Code section 1708 to abstain from injuring the rights of the lienholders and enriches himself at their expense.
 [9] Siskiyou Mills' payment of the logging contractor's charges would not alter its relationship with the lienors or the lien-subject property. The Civil Code provisions do not discharge the liens upon payment of a logging contractor who fails to pay his employees. Indeed the last portion of section 3065 permits the owner of the timber to exact a bond to protect himself against the contractor's failure to pay for the work, implying that absence of a bond leaves him vulnerable to double payment. So long as the persons who worked on the logs are unpaid and the other statutory lien conditions persist, the logs in the owner's hands are burdened with wage liens without regard to payment of the contractor.
 [10] In this case, it may be assumed, plaintiff's attempts to attach the logs were ineffectual. Siskiyou Mills points out that section 3065a gives the foreclosure plaintiff a right of attachment, arguing that failure to attach leaves the owner free to dispose of the logs without personal liability. We disagree. The general attachment statute (Code Civ. Proc., 537, subd. 1) denies the attachment remedy to a plaintiff whose claim is secured by lien. Section 3065a states that a logger's lien plaintiff "may" attach, thus supplying an ancillary remedy the plaintiff would not otherwise have. The *113 remedy is permissive and cumulative. (See Wm. J. Bettingen Lumber Co. v. Kerrin, 99 Cal.App. 686, 689-691 [279 P. 163].) Section 3065a declares that commencement of a foreclosure suit continues the line "in force." This declaration is in no way qualified by the permissive attachment provision. Failure to pursue the latter remedy does not license the foreclosure defendant's deliberate destruction of the lien or its value. The lien, not the attachment, creates the plaintiff's interest in the property, and the defendant in a foreclosure suit may not knowingly dispose of it to destroy the lien or its value without incurring personal liability. Our view parallels that reached in decisions under the loggers' lien statutes of other states. (Breault v. Merrill & Ring Lumber Co. (1898) 72 Minn. 143 [75 N.W. 122]; Goodrow v. Buckley (1888) 70 Mich. 513 [38 N.W. 454].)
 [11] Section 3065a expressly permitted plaintiff to join in one action the foreclosure suit against Siskiyou Mills and the contract claim against W. H. Rasor & Sons, Inc. The trial court granted a personal money judgment against Siskiyou Mills, based not on the events described in the complaint but on Siskiyou Mills' course of action after commencement of the lawsuit. Such a shift in the procedural destination of the suit is consistent with the concept that lien foreclosure actions are equitable in character; that when equity jurisdiction attaches, the court will dispose of the entire controversy and render a money judgment, even though the plaintiff can no longer obtain the foreclosure remedy originally sought. (Robinett v. Brown, 167 Cal. 735, 736 [141 P. 368]; Becker v. Superior Court, 151 Cal. 313, 316- 317 [90 P. 689]; 31 Cal.Jur.2d, Liens, 48, p. 290; 18 Cal.Jur.2d, Equity, 16, pp. 161-162.)
 Judgment affirmed.
 Pierce, P. J., and Schottky, J., concurred.
 "The liens provided for in this section shall attach from the date of the commencement of such work or labor, ... and shall be preferred liens, prior in dignity to all other liens, claims or encumbrances, .... They shall not be limited as to amount by any contract price agreed upon between the owner of said logs or timber products manufactured therefrom and any contractor, except as hereinafter provided, ...."
 "... It shall be lawful for the owner of such logs and timber products to protect himself against any failure of the contractor to perform his contract and make full payment for all work done thereunder by exacting such bond or other security as he may deem satisfactory."
 Civil Code section 3065a provides in part: "The lien created by the last preceding section shall continue in force for a period of thirty days from the time the person claiming such lien shall have ceased to do or perform the work or render the service for which said lien is claimed, while such logs, lumber or other manufactured timber products are in the county in which such labor was performed or service rendered, and said lien shall cease at the expiration of the said thirty days unless the claimant thereof, or his assignee or successor in interest, brings suit to foreclose the same, in which case the lien continues in force until the said lien foreclosure suit is finally determined and closed, and in case such proceeding be not prosecuted to trial within two years after the commencement thereof, the court may in its discretion dismiss the same for want of prosecution. If any part of the property on which the lien existed is removed from the said county, the lien continues on the balance remaining in the county to the full extent of the claim."
 "The plaintiff in any such lien foreclosure suit, at the time of issuing the summons or at any time afterwards, may have the logs, lumber and other manufactured timber products upon which such lien subsists attached, as provided in this code and the Code of Civil Procedure, ...."
 "Any number of persons claiming liens under this and the next preceding section may join in the same action ...."
 "Nothing contained in this or the next preceding section shall be construed to impair or affect the right of any person to whom any debt may be due for work done, ... to maintain a personal action to recover said debt against the person liable therefor, or his sureties, either in connection with the lien suit or in a separate action, ..."
NOTES
[fn. 1] 1. Civil Code section 3065 provides in part: "Any person who shall, by his own labor, ... do or perform any work or render any service in connection with felling, preparing or transporting any logs, or in manufacturing lumber or other timber products from such logs, ... shall have a lien upon any and all of such logs and upon any and all of the lumber and other timber products manufactured therefrom, ... for the value of such labor done ... whether said work was done or service was rendered at the instance of the owner of such logs or timber products manufactured therefrom, or of any other person acting by his authority or under him, directly or indirectly, as contractor or otherwise; and every contractor, subcontractor, or other person having charge of the felling, preparing or transporting of the said logs or of their manufacture into timber products shall be held to be the agent of the said owner for the purposes of this section.