HORST, Appellant, *v.* STALEY, Respondent.

(No. 7,482.)

(Submitted February 5, 1936.  Decided February 20, 1936.)

[54 Pac. (2d) 876.]

*Mr. John G. Skinner* and *Mr. Claude A. Johnson,* for Appellant, submitted a brief and argued the cause orally.

*Mr. William V. Beers,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

On February 1, 1931, defendant Philip Staley, Jr., was farming certain land, known as the Henry place, near Fromberg, Montana. He was a tenant of the plaintiff John Horst, who bought the farm during his occupancy. On that date he entered into an agreement with plaintiff to purchase certain personal property—farming machinery, livestock, etc.—from him. The price agreed on was $3,000, and to secure the payment thereof, defendant executed a promissory note and a chattel mortgage. The mortgage by its terms covered all the property sold, and also the crops to be grown upon the Henry place in the year 1931. Thereafter defendant farmed the Henry place, and retained possession of the mortgaged property until the last of January, 1933. No formal mortgage was ever executed covering the crops grown in the year 1932. On or about January 29, 1933, defendant being in default under the terms of the mortgage, plaintiff moved onto the Henry place and took possession of all the mortgaged personal property, and of certain crops, hay, grains, etc., which had been grown on the place in 1932. Defendant moved out and went to Laurel, Montana.

In 1932 defendant raised some sugar-beets. These beets were sold to the Great Western Sugar Company. At the time plaintiff took possession of the mortgaged property and moved defendant out, the sugar company still owed for a part of the purchase price of the beets, the exact amount being then undetermined. Plaintiff claimed the right to collect this money and to apply the same toward satisfaction of the note and mortgage. Defendant, on the other hand, contended that plaintiff

had no right to the tenant's share of the proceeds derived from the 1932 beets, either by way of a mortgage or otherwise.

As a consequence of the disagreement, plaintiff, in June, 1933, filed an action against defendant and the sugar company. In his complaint he set out the note and mortgage; he alleged that on or about January 29, 1933, defendant was in default under the terms of the mortgage; that the note had not been paid, and particularly that no payment had been made on November 15, 1931; that because of this situation plaintiff and defendant made an agreement on or about January 29, 1933, to the effect that in order that defendant might be spared the cost and expense of foreclosure proceedings, defendant would deliver all of the property described in the mortgage to plaintiff at the price of $1,983.40, and that thereafter defendant would pay the balance due on the note and mortgage ($880.86) on demand, and that the proceeds of such crops as had been sold should be applied upon the mortgage indebtedness; that pursuant to that agreement, plaintiff took possession of the mortgaged property together with certain crops, grains, hay, etc., then upon the place, and that he credited defendant on the note with the sum of $1,983.40, leaving a balance due in the amount of $880.86; that defendant consented and agreed to this proposition, and accordingly turned the property all over to plaintiff; that in accordance with that agreement plaintiff was entitled to receive any and all money due from the sugar company for the beets grown by defendant in 1932 and to apply the same upon the indebtedness represented by the note and mortgage remaining unpaid. Plaintiff requested the court to confirm that agreement, and the delivery to plaintiff of the mortgaged property and crops at an agreed price of $1,983.40 in lieu of foreclosure and sheriff's sale thereof, and that plaintiff then have judgment against the defendant for the balance still due upon the note and indebtedness in the sum of $880.86, with interest. Plaintiff further demanded that if defendant should disavow the agreement as alleged by plaintiff, or if the court should for any reason disapprove of that agreement, then, in such event,

plaintiff should have judgment against defendant for the balance due on the note and for a foreclosure of the mortgage and for a deficiency judgment for any balance remaining unpaid after the proceeds from a sale of the property were applied upon the indebtedness.

The sugar company paid the money in question, $285.43, into court to abide the result of the controversy between plaintiff and defendant, and thereby eliminated itself from further participation in the action. Defendant in his answer denied that there was ever any agreement such as that alleged by plaintiff. He alleged that plaintiff took possession of the mortgaged property and the crops on the Henry place wrongfully, forcibly and without defendant's consent; that plaintiff forcibly ejected defendant and wrongfully converted the property in question; that he, defendant, was entitled to all of the crops grown in 1932, and particularly the beets grown in that year. Defendant prayed that plaintiff take nothing by his action, and that defendant have judgment against plaintiff for the wrongful conversion of the property and crops in question. Plaintiff by reply denied the allegations of conversion set out in the answer.

The cause was tried to the court sitting without a jury. Plaintiff adduced evidence to show that during the year 1931 he made advances of various sums of money to defendant to enable the latter to carry on his farming activities on the Henry place; that it was agreed between them that when the crops were sold the amount thus advanced was to be repaid to plaintiff, and that then anything remaining from the proceeds of the crops would be applied toward the mortgage indebtedness; that accordingly, in the fall of 1931, defendant paid plaintiff about $1,200 proceeds from crops, and that approximately $900 of this amount was applied toward satisfaction of advances made during the year by plaintiff, and that the remainder was applied to the mortgage indebtedness; that although no new mortgage was executed covering the crops grown in 1932, it was agreed and understood by the parties that during that year they would observe the same arrangement that had existed between them the

previous year; that plaintiff again advanced various sums of money during the year 1932 to the extent of more than $900, and that again in the fall of that year defendant paid over to plaintiff money received from the crops, and after deducting the amount advanced by him, plaintiff was to apply the balance, if any, to the mortgage indebtedness; that at that time defendant still owed about $2,888 on the note and mortgage; that thereafter plaintiff requested defendant to sign a new mortgage, but that defendant objected to so doing; that some difficulty arose between them with reference to this matter, and that it was finally decided and agreed between them that defendant would turn the whole thing over to plaintiff, including any future payments that might be received from the 1932 crop of beets; that they placed a value of $1,983.40 upon all the mortgaged property and the remainder of the 1932 crops then remaining upon the Henry place; that this amount was indorsed upon the back of the note as a credit, leaving a balance of $880.86, which amount defendant agreed to pay upon demand; that defendant agreed to this indorsement upon the note, and that he would pay the balance as indicated thereon; and that thereafter defendant delivered possession of the property over to plaintiff and removed from the Henry place of his own volition.

Defendant submitted evidence to the effect that he had never agreed to the indorsement of $1,983.40 as a credit on the back of the note; that he had never known anything about it; that there was never any agreement between the parties whereby an accounting of the property was had, and defendant agreed to pay the balance of $880.86; that there was never any agreement of any kind to the effect that defendant should turn the property over to plaintiff, but that, on the contrary, plaintiff forcibly ejected him from the Henry place and took possession of the property without his consent, and converted it to his own use.

After both sides had rested, the court made findings of fact and conclusions of law. It found that defendant was a tenant

of plaintiff during the farming season of 1931 and also 1932; that the lease was oral and would have expired February 28, 1933, provided plaintiff gave the proper notice to terminate the lease; that plaintiff had a mortgage on all the farming equipment, etc., of defendant, but did not have any mortgage on his crops, the mortgage being past due and unpaid; that some difficulty arose between plaintiff and defendant and as a result defendant left the premises, giving up the mortgaged property, some blacksmith tools, etc., and also crops of wheat, oats, barley and hay, to the plaintiff, under an arrangement with plaintiff that he would accept all of this property and the possession of the premises in settlement of the note he held against defendant; that no mortgage sale of the property was ever had, nor was any accounting made regarding the crops and the other property; that after this settlement there became due from the sugar company certain sums in the way of bonus, the same being proceeds for beets raised by defendant on the leased premises; that by the terms of the lease plaintiff was to have one-fifth of the beets, and defendant four-fifths, and that these future beet payments or bonuses were not considered by the parties at the time they made their settlement. In accordance with these findings the court held that neither plaintiff nor defendant should recover anything from each other; that plaintiff was entitled to one-fifth of the sugar-beet money, and defendant to four-fifths thereof.

Plaintiff filed written exceptions to the court's findings, but the court refused to disturb the findings and conclusions made. Plaintiff appealed from the judgment. Several specifications of error are urged. One of the most serious of these concerns the court's finding that the parties made an agreement whereby plaintiff was to accept all the property and possession of the premises in complete settlement of the note he held against defendant.

After a careful reading of the record, we are inclined to agree with plaintiff's assertion that there is no evidence upon which to base such a finding. Plaintiff alleged and offered

evidence to prove that there was an agreement whereby plaintiff was to take over the property and credit defendant upon the note for an amount agreed upon by the parties as being a fair value of the property, and that after deducting that credit defendant was to pay the balance due on the note. Defendant claimed that there was no such agreement; that there was no agreement of any nature whatever. Neither of the parties contended that there was any such agreement as that found by the court, and there is no evidence of any such agreement. The court, in making such a finding, apparently sought to compromise the controversy existing between the parties. In so doing, it necessarily disregarded the allegations and proof submitted by the parties upon the principal issues presented. This the court has no power or authority to do; a finding so made cannot be sustained. A court has no power to make contracts for the parties. (*Union Electric Co.* v. *Lovell Livestock Co.*, ante, p. 450, 54 Pac. (2d) 112.)

Manifestly, this finding by the court is vital to the determination of the principal issues as presented in the case. It is clear that a judgment based upon such an unwarranted finding cannot be permitted to stand. Ordinarily, in equity cases, where a judgment cannot be supported or sustained, this court may review all the evidence and direct the entry of a proper judgment. (Sec. 8805, Rev. Codes 1921.) Here we believe that such a course is not wise. (See *Billings* v. *Missoula W. P. Sash Co.*, 88 Mont. 322, 292 Pac. 714.) The evidence upon some of the important points involved is very meager and confused. Therefore, in the circumstances as presented, we think that there should be a new trial of the cause, and thereupon the district judge will have an opportunity of seeing and hearing the witnesses, and will be in a much more advantageous position to determine correctly the issues than this court. We are impelled to this course by the fact that the determinative finding of the court actually tendered an entirely new element, not included in the pleadings or proof of either party.

550

The judgment is reversed and the cause remanded, with instructions to grant a new trial.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES MATTHEWS, ANDERSON and MORRIS concur.