No. 13604

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

SCHOOL DISTRICT No. 1 of Silver Bow
County, a Political subdivision of the
State of Montana et al.,

                    Plaintiff and Appellant,

     -vs-

MAURICE DRISCOLL,

                    Defendant and Respondent.

---

Appeal from:  District Court of the Second Judicial District,
              Honorable James D. Freebourn, Judge presiding.

Counsel of Record:

    For Appellant:

        John G. Winston, County Attorney, Butte, Montana
        Craig Phillips argued, Deputy County Attorney,
         Butte, Montana

    For Respondent:

        Robert Holland argued, Butte, Montana

    For Amicus Curiae:

        McKittrick and Duffy, Great Falls, Montana
        Joseph W. Duffy argued, Great Falls, Montana
        James Driscoll argued, Helena, Montana

---

                    Submitted:  June 7, 1977

                        Decided: AUG 1

Filed:

_____
                     Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment of the district court, Silver Bow County, awarding defendant school supervisor accrued sick and annual leave, and his contractual salary for the months of May and June, 1975.

At the outset we note in view of the failure of appellant School District to set forth the issues of its case as provided by Rule 23, M.R.App.Civ.P., we will discuss this matter on the issues as delineated and set forth by respondent.

Issues I and II ask this Court to determine whether the district court properly interpreted the clauses of the collective bargaining contract concerning wages, hours and working conditions entered into by and between Butte Teamsters Union, Local No. 2 and the School District.

Issue III is directed at the court's finding that respondent was entitled to his contract pay for the months of May and June, 1975.

The trial court found respondent Maurice Driscoll was a party to three contracts with School District No. 1, not two as alleged by the School District. The first contract was a collective bargaining agreement executed by and between the School District and Butte Teamsters Union, Local No. 2 as the sole bargaining representative for all administrative personnel in the school system. The second contract was an individual contract executed on July 1, 1974, between Driscoll and the School District providing for an annual salary of $24,217.40. The third contract was the contract of employment of Driscoll, as a consultant to the

assistant director of the Vo-Tech Center, and the Vo-Tech Center. It became effective on February 28, 1975, to run through the months of March, April, May and June, 1975.

The employment facts are not in dispute. Driscoll had been Director of the Vo-Tech Center for several years. On January 25, 1975, he notified the School District that he intended to retire on June 30, 1975. He requested a temporary director be appointed effective February 28, 1975 and that he would remain as a consultant through June 30, 1975. On February 18, 1975, Dave Keltz was appointed assistant director in charge of operations effective February 28, 1975. Driscoll was paid as a consultant through April 1975. He was informed on April 29, 1975 that the Board of Trustees had rescinded its motion of January 20, 1975 and he was dismissed from all duties effective May 5, 1975. Driscoll performed services in May and June, but was not paid for them.

Issue I. The district court did not err in finding that Driscoll was entitled to receive 71 days sick leave multiplied by his daily rate of pay which is determined by dividing his annual salary by 190 as set forth in Article XXIV of the collective bargaining agreement entered into by and between Butte Teamsters Union, Local No. 2 and School District No. 1.

The relevant part of the collective bargaining agreement, Article XXIV, Sick Leave, reads:

> "Every administrator of School District No. 1 shall be allowed an annual fifteen (15) days sick leave with full salary cumulative for one hundred fifty (150) days. Retirement pay will be 50% of accumulated sick leave and shall be included as part of the administrator's yearly salary for the year in which he retires. * * * Said daily rate of pay shall be determined by dividing his annual salary or wage by 190."

- 3 -

It was stipulated between the parties that Driscoll had accumulated 142 days of annual sick leave. The School District contends that in determining how much accumulated sick leave should be paid to Driscoll as retirement pay, his yearly salary of $24,000 should be divided by 260, and then, that figure should be multiplied by 71 days (50% of the accumulated sick leave -- Article XXIV, Sick Leave). Driscoll contends, and it was found by the district court, that he should be paid sick leave pay in terms of retirement at the rate of $127.46 by dividing his annual salary of $24,000 by 190 x 71 days, as is clearly set forth in Article XXIV of the contract.

We note the quoted portion of Article XXIV of the contract relates to benefits and coverage for every administrator. The School District concedes that the contract generally, and that clause particularly, covers Driscoll. There is nothing whatsoever in this particular clause indicating the parties should use the figure "260" in the formula for determining how much accumulated sick leave will be received as retirement pay by the administrator. The chairman of the Board of Trustees admitted that the figure "260" was picked out of the air; while the school clerk asserted that the figure "260" should be used because it has reference to the number of days Driscoll was employed under his contract. That is not part of the contract agreed upon by the parties; rather, the parties agreed to use the figure "190".

It is clear the language of the particular contract clause was what was contracted for. Jim Roberts, secretary-treasurer of the Teamsters Union, who negotiated the contract testified:

- 4 -

"Q. Will you relate to the Court, if you can remember
that, particularly in the 1974 negotiations the
meetings concerning this particular provision? A.
During the course of all collective bargaining
processes with the administrators we have submitted
demands to the Board to improve sick leave as it is
spelled out in the current contract and during all
of the collective bargaining negotiations you reach
a point where some of the things have to go by the
wayside and during the '74 and '75 negotiations we
reached that point and we went into caucus without
committees and it was decided that based on the, as
our understanding of the negotiated provisions as
it exists, that we were adequately protected and
to back off on our proposals and in doing so we tried
to make it known to the school board that we felt,
with the fact that the 190 days was a formula used
that we were adequately protected on our sick leave.

"Q. It was your interpretation that the 190 figure
divided into their annual salary applied to every
administrator in the district? A. Without question.

"Q. And the Board, to your understanding, fully
understood that? A. Yes, definitely.

"Q. In regard to that, what have they done as far
as the negotiations that are presently involved in
this regard to that article? A. At the last bar-
gaining session we had with the Board of trustees
on February 24, I believe that's when it was, the
Board submitted a proposal to us even though it may
have been untimely to modify the current sick leave
provisions to spell out that the 190 days be changed
to read the actual number of days that each adminis-
trator has worked, his work year schedule."

Again, there is nothing in the contract as it pertains to

sick leave wherein 260 is interjected into the formula to

establish the sick leave. While the sick leave provision clearly

contemplates having every administrator of the School District

come under its coverage, a casual look at the clause pertaining

to vacations, Article XXVII, specifies that it only applies to

administrators employed on a twelve-month basis.

If the School Board desired to have the formula for twelve-

month employees based on 260 rather than 190, obviously the place

to bring this up was at the bargaining table.

- 5 -

The School District wants this Court to interpret the sick leave clause in such a way as to give effect to its position which, up to the time in question, it has been unsuccessful in accomplishing through the collective bargaining process. The courts have no power to make contracts for parties. Horst v. Staley, 101 Mont. 543, 54 P.2d 876; Reeves v. Littlefield, 101 Mont. 482, 54 P.2d 879. The language of the contract is clear and unambiguous, and the courts have no authority to change the contract or disregard the express language used. Williams v. Insurance Co. of North America, 150 Mont. 292, 434 P. 2d 395. This Court is not at liberty under the guise of construction to alter the contract of the parties. Ryan Mercantile Co. v. Great Northern Railway Co., 186 F.Supp. 660, affirmed 294 F.2d 629. In the interpretation of contracts, the language employed must be given its ordinary meaning. Quirk v. Rich, 40 Mont. 552, 107 P. 821. There are no inconsistencies in the contract clause in question. There are no ambiguities in question. The clause is clear. Driscoll was to receive retirement pay as decreed by the district court.

The School District attempted to justify its rationale by premising its argument on a survey of Montana administrative salaries. The court properly sustained the objection of Driscoll that this exhibit was not relevant to the issues here.

The School District erroneously relies upon Zderick v. Silver Bow County, 154 Mont. 118, 460 P.2d 749, for the proposition that it had no authority to enter into a contract for sick leave or severance pay. That case involved a county, not a school district, and held that because, in 1969, the

legislature had not yet granted to county commissioners the authority to contract over the subject matter, to-wit: the accumulation of unused sick leave to be used as severance pay, the particular clause was to be stricken. In 1973 the state legislature enacted into law Title 59, Chapter 16, R.C.M. 1947, granting all public employers the right to bargain collectively with their employees over rates of pay, hours, fringe benefits and other conditions of employment. Sections 59-1601 through 59-1617, R.C.M. 1947. However, since 1971 school districts have had the authority to enter into binding collective bargaining contracts over such matters. Sections 75-6115 through 75-6128, R.C.M. 1947 (repealed 1975). Zderick mandated the legislature must act in this area before such a clause could be enforced, and that is precisely what the legislature has done.

Additionally, in 1974 the state legislature enacted Chapter 374, Montana Session Laws, which amended section 68-1602, R.C.M. 1947. That particular law concerns the proposition that a public employee who is a member of a retirement system funded through monies established under a collective bargaining agreement also remains eligible as a member of a public employment retirement system. By enacting that particular provision into law, it is clear the state legislature reaffirmed its policy that the parties could collectively bargain for such things as retirement pay.

The School District cites Bitney v. School District No. 44, 167 Mont. 129, 135, 535 P.2d 1273, which dealt in part with the amount of unused sick leave pay a superintendent of schools was to receive when his contract was terminated. Here, Bitney does little to support the School District's position; rather it

supports the district court's decision. In Bitney there was no collective bargaining contract covering the issue, and the School District policy was silent on the matter. This Court held that the terms of the contract entered into by and between the superintendent and the school district should be enforced and said:

"Therefore, we find plaintiff contracted for the regular sick leave granted to all teachers of the school district." (Emphasis added.) 167 Mont. 135.

Similarly, in the instant case, it is contended the contract rights, as the district court held, should be enforced. We agree.

Issue II. The court did not err in finding that Driscoll was entitled to receive additional sick leave at the rate of 17.5 days multiplied by $109.46 which is determined pursuant to Article XXIV of the collective bargaining agreement.

The relevant part of the collective bargaining agreement, Article XXIV, Sick Leave, reads:

"* * * In addition, five (5) days per year cumulative to thirty-five (35) days shall be allowed at the difference between $18 per day and the administrator's daily rate of pay. Said daily rate of pay shall be determined by dividing his annual salary or wage by 190."

Pursuant to the quoted language, the district court found and decreed that Driscoll was to receive the additional sick leave pay of 17.5 days in the amount of $1,915.53. The School District asserts this Court should ignore the language "In Addition" found in the language contracted for by the parties or, that the Court should give it some type of abortive meaning to deny Driscoll the benefits to which he has a legal right.

The words "In addition" are not ambiguous and should be interpreted in their usual sense. Section 13-710, R.C.M. 1947.

- 8 -

Black's Law Dictionary, Fourth Edition, contains these definitions:

"Add. To unite, attach; annex; join."

"Addition. Extension; increase, augmentation."

The district court did interpret these words in their usual sense denoting that something is added to what preceded it.

Clearly, the ruling of the district court is supported by substantial evidence. Roberts' testimony is directly on this point. Even Grant, the Chairman of the Board of Trustees, admitted the School District was "remiss" in not getting other language in the contract if it intended something different by the particular clause. The contract clause itself, as well as the applicable case law cited heretofore, demonstrates without a doubt that the district court's finding, conclusions and judgment should not be disturbed.

Issue III. The court did not err in finding the School District owed to Driscoll $4,036 pursuant to the consultant contract entered into by and between the parties.

Maurice Driscoll was a teacher and administrator in School District No. 1 for approximately 35 years. In February 1975, he advised the School Board he wished to retire on June 30, 1975. His retirement was approved by the School Board which indica ted that for the months of March, April, May, June 1975, Driscoll would serve as a consultant to Dave Keltz, who was named acting director in Driscoll's stead. Driscoll's pay for these four months was to be $2,018 per month.

The only termination notice Driscoll received was a letter written pursuant to action of the Educational Committee indicating his contract had been rescinded. Driscoll then notified the Teamsters Union, Local No. 2 of the letter he received concerning the rescission of the contract, and the Teamsters Union immediately

- 9 -

protested the action pursuant to terms of the collective bargaining agreement.

Driscoll continued to serve as a consultant from March until June 30, 1975, advising Keltz, the acting director, and insuring that the orderly transition was accomplished. He received his monthly salary for April, but not for May or June, 1975. Throughout this period (1) Driscoll worked and made himself available on a consulting basis as per his contract, and (2) he maintained his office in the vocational educational building. Further, no one in an official capacity advised him throughout the period of May and June that he should not perform his duties. This was substantiated by Keltz who testified that Driscoll, for the months of May and June 1975, did advise and consult with him and maintained his office until June 30, 1975. On that particular date, the School Board cleared out Driscoll's files, as it was the last day of the contract.

During this entire period Keltz was never officially or otherwise notified by the School Board, the Superintendent of Schools, or the Clerk of the School District that Driscoll had been fired or that his contract had been rescinded. Again, the only indication that he had in this regard was seeing the letter Driscoll received on the matter, written pursuant to the action of the Education Committee.

We note here that the Board of Trustees, sitting as a School Board, did not take any action at a public regular meeting or a properly called special meeting or at all, relative to the rescission of Driscoll's contract or his firing. In fact, the chairman of the board, Jim Grant, admitted the manner of the attempted discharge did not conform even to the policy of the

School Board itself, and that, in fact, it was not normal action to attempt to cancel a contract in this fashion.

Even though the Teamsters Union protested the discharge, there was never a hearing set up pursuant to the terms and conditions of the collective bargaining agreement. Moreover, the attorney for Driscoll, in Driscoll's presence, requested from the School District notice of when the entire Board of Trustees was going to act on the discharge. However, no meeting or hearing was ever set pursuant to contract or law.

The record is clear the letter attempting to rescind Driscoll's contract was not a result of any meeting whatsoever of the School Board, rather it was a product of the Education Committee, meeting as a committee. Thus, the attempted rescission or firing was void since it was in violation of section 75-5930, R.C.M. 1947, which provides in pertinent part:

> "No business shall be transacted by the trustees of a district unless it is transacted at a regular meeting or a properly called special meeting. * * *"

See: Wyatt v. School District No. 104, 148 Mont. 83, 417 P.2d 221.

Consequently, the attempt to rescind the contract and to fire Driscoll are both void. In Lowery v. Garfield County, 122 Mont. 571, 584, 208 P.2d 478, the Court said:

> "A 'void thing' is no thing; it has no legal effect whatsoever and no right whatever can be obtained under it or grow out of it. In law it is the same thing as if the 'void thing' had never existed."

Thus, in Lowery, even a subsequent act of the legislature could not cure something that was void.

In the probate case of State v. McCracken, 91 Mont. 157, 163, 6 P.2d 869, the Court said:

> "If the order of July 1, is void, all proceedings founded upon it are ineffective for any purpose. It was open to collateral attack, and may be set aside at any time."

- 11 -

See also: In re Takahashi's Estate, 113 Mont. 490, 129 P.2d 217.

As in Wyatt, here there was no regularly scheduled or special meeting held by the School Board of Trustees in rescinding Driscoll's contract or discharging him. In Wyatt, the teacher also was dismissed without a meeting. The Court in that case found that since the School Board had failed to follow the law in the dismissal of Wyatt:

"* * * the very dismissal was void for want of jurisdiction. No proceedings on appeal could have validated the dismissal that originally was void for want of jurisdiction." 148 Mont. 83, 91.

The School District cites School District No. 4, Lincoln County v. Colburg, _____Mont._____, 547 P.2d 84, 33 St. Rep. 296. We find that case not in point since the decision of the School Board was in question there. In the instant case, the School Board did not meet and did not rescind Driscoll's contract.

Further, Driscoll continued to perform and did perform his duties pursuant to contract in the months of May and June, 1975, and was not thwarted in any way whatsoever by the School Board in performing in his official capacity and pursuant to his contract.

We find Driscoll is entitled to his contractual salary for the months May and June, 1975, in the total amount of $4,036. Wyatt v. School District No. 104, supra; Lindgren v. Board of Trustees, _____Mont._____, 558 P.2d 468, 33 St. Rep. 1226.

There is substantial credible evidence to support the rulings of the district court and its judgment is affirmed.

_____
Justice.

- 12 -

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.